DECISION
 I. Facts and Procedure {¶ 1} Appellants, Shavonne Foster, and Tony and Sonya Alexander, appeal a judgment of the Hamilton County Juvenile Court granting permanent custody of Krishae Needom and Nathaliyah Needom to appellee, Hamilton County Department of Job and Family Services ("HCJFS"), and granting custody of Jeremy Eicher, Jr., and Jervonte Eicher to Elizabeth and Jonathan Eicher. We affirm the trial court's judgment as to the Eicher children, but reverse it as to the Needom children, and remand the case for further proceedings.
 {¶ 2} Foster is the mother of all four children. Jeremy Eicher, Sr., the father of the Eicher children, never participated in the proceedings. Christopher Needom is the father of the Needom children. He was incarcerated for most of the proceedings. Sonya Alexander is the maternal grandparent of all four children, and Tony Alexander is the step-grandparent. The Eichers are the paternal grandparents of the Eicher children.
 {¶ 3} Jeremy and Jervonte are the oldest two children. Foster had lived with the Eichers for a time and had also left the two children with them for long periods of time. The Eichers moved to Colorado due to a job opportunity, and the children remained with Foster. Eventually, Foster left the elder Jeremy Eicher and began a relationship with Needom that produced Krishae. HCJFS substantiated allegations that the three older children had been neglected. They were voluntarily placed with the Alexanders. *Page 3 
 {¶ 4} HCJFS received a report that Foster had tested positive for cocaine when she gave birth to Nathaliyah, her youngest child. Foster stated that she was homeless and had been living in abandoned buildings and under bridges. She acknowledged that she could not care for the baby.
 {¶ 5} Subsequently, the juvenile court determined that all four children were neglected and awarded temporary custody to HCJFS. Nathaliyah was placed in a foster home while the other three children remained with the Alexanders.
 {¶ 6} HCJFS came to the Alexanders' home to remove the children following a domestic-violence incident involving the Alexanders' other daughter, Sharonne. At the time of this incident, which involved a suicide threat from Sharonne, the three older children were present in the home. When the caseworkers arrived at the Alexanders' home, the children were filthy and appeared not to have been bathed in days. HCJFS placed the children in foster care.
 {¶ 7} The Alexanders filed a petition for legal custody of all four children. HCJFS began a home study to determine if the Alexanders would be an appropriate relative placement. The study was not completed because HCJFS discovered that Tony Alexander had a 1984 conviction for assault, which it contended automatically disqualified the Alexanders' home as a relative placement. HCJFS also had concerns about the Alexanders beyond the disqualification, including the Alexanders' refusal to give the agency access to their own children. But even after the children had been removed from their home, the Alexanders visited with them. The visits went well, and the children had bonded with the Alexanders.
 {¶ 8} The Eichers also filed a petition for custody of the Eicher boys. They resided in Colorado at the time, and the Colorado Department of Human Services *Page 4 
approved their home for placement of the two boys. Subsequently, Jonathan Eicher lost his job in Colorado, and the Eichers returned to Cincinnati.
 {¶ 9} Despite his job loss, Jonathan Eicher had a history of steady employment, and he soon obtained a new job. HCJFS visited the Eichers' home and found it to be appropriate for the children. Nevertheless, evidence at the hearings raised concerns about an incident of domestic violence at the Eichers' home, Elizabeth Eicher's mental health, and Jonathan Eicher's temper. Upon their return to Cincinnati, the Eichers visited with the boys and bonded with them.
 {¶ 10} HCJFS requested that the Eichers receive custody of the Eicher boys. It moved for permanent custody of the Needom girls, since Tony Alexander's assault conviction disqualified the Alexanders, and no other suitable relative had come forward.
 {¶ 11} A magistrate denied the Alexanders' petition for custody of all four children. It granted the Eicher's petition for custody of the Eicher boys. It also granted HCJFS's motion for permanent custody of the Needom girls. The Alexanders and Foster filed objections to the magistrate's decision.
 {¶ 12} Reports filed before the hearing on the objections showed that the boys had adjusted well to the Eicher home and that the Needom girls were doing well in foster care. While the objections were pending, Jonathan Eicher received a job offer in Wisconsin and considered taking it. At the hearing on the objections, the guardian ad litem stated that the two sets of children were bonded and expressed concern about separating the siblings. Nevertheless, she ultimately supported the magistrate's recommendation. The trial court overruled the objections and affirmed the magistrate's decision. This appeal followed. *Page 5 
 {¶ 13} Foster and the Alexanders raise essentially the same assignment of error. They contend that the trial court erred by awarding legal custody of the Eicher children to the Eichers and by granting permanent custody of the Needom children to HCJFS. They argue that the evidence did not support the court's decision and that the decision was contrary to law. We sustain these assignments of error as to the Needom children.
 II. Eicher Boys — Placement with Paternal Grandparents inChildren's Best Interest {¶ 14} We begin by discussing the Eicher boys. Under R.C.2151.353(A)(3), if a court finds a child to be an abused, neglected, or dependent child, it may award legal custody to either parent or to any person who has filed a petition for legal custody. The statute does not require that the court consider placing a child with a relative before granting permanent custody to a state agency.[1] The juvenile court has discretion to determine what placement option is in the child's best interest. An appellate court will not reverse the juvenile court's award of custody absent an abuse of discretion.[2]
 {¶ 15} In determining the child's best interest, the court must consider all relevant factors, including, but not limited to, the following: (1) the child's interaction and relationship with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through *Page 6 
the child's guardian ad litem, with due regard for the maturity of the child; (3) the child's custodial history; and (4) the child's need for a legally secure placement.[3]
 {¶ 16} The evidence supported the juvenile court's finding that it was in the Eicher boys' best interest to be placed with the Eichers. A home study conducted in Colorado found them to be appropriate custodians for the children. Before their move to Colorado, they were involved with their grandchildren and had provided care for them for significant amounts of time. Although Jonathan Eicher had lost his job in Colorado, he obtained a job shortly after returning to Cincinnati and had a history of steady employment. HCJFS visited their home in Cincinnati and found it to be appropriate.
 {¶ 17} Although the Alexanders presented evidence about an alleged incident of domestic violence in the Eichers' home, the evidence showed and the court found that the incident had not resulted in any injury to any party involved and or in the police filing charges. In fact, though the Eichers were not perfect, our review of the record shows that several of their alleged shortcomings raised in the Alexanders' and Foster's brief were taken out of context or exaggerated, or came from witnesses of questionable credibility.
 {¶ 18} The children's guardian ad litem expressed reservations about separating the four siblings, which was a valid concern. But that concern did not change that the evidence showed that the boys' best interest would be served by awarding custody to the Eichers. Further, the Eichers testified that they would cooperate with HCJFS so that the siblings could see each other. *Page 7 
 {¶ 19} Competent, credible evidence supported the trial court's decision to award custody of the Eicher boys to the Eichers, and this court will not substitute its judgment for that of the trial court. Its decision was not so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion.[4] Consequently, we overrule the assignments of error as they relate to the award of custody of the Eicher boys to the Eichers.
 III. Needom Girls — Maternal Grandparent's Assault ConvictionNot an Automatic Bar to Placement {¶ 20} We reach a different conclusion as to the permanent-custody award of the Needom girls. A juvenile court may grant permanent custody of a child to the state if the court determines, by clear and convincing evidence, that it is in the child's best interest.[5] Clear and convincing evidence is evidence sufficient to cause the trier of fact to develop a firm belief or conviction as to the facts sought to be established.[6]
 {¶ 21} The record supports the trial court's finding that the Needom girls could not or should not be placed with their parents within a reasonable time.[7] Their father was incarcerated. He never sought reunification or availed himself of any services due to his incarceration. Foster was a drug addict who was frequently homeless. Though HCJFS offered her services, she did not avail herself of them and disappeared at various times throughout the proceedings. The parties do not dispute that she would not be able to care for her children within a reasonable time. *Page 8 
 {¶ 22} But the trial court could not have concluded that it was in the children's best interest to grant permanent custody to HCJFS, because the court did not have all the evidence before it. The home study on the Alexanders was never completed because HCJFS and the trial court believed that Tony Alexander's 1984 assault conviction prevented the Alexanders from having custody.
 {¶ 23} In making that determination, HCJFS relied upon Ohio Adm. Code5101:2-42-18(F). It states that a public children services agency shall not approve a relative placement "when the relative * * * or other adults residing within the home have been convicted of or pleaded guilty to any offenses identified in section 2151.419 of the Revised Code." We note that this code section only prevents HCJFS from placing children in a relative's home; it does not apply to the court. Theoretically, a court could still award custody even though the relative or other adult in the home has a conviction identified in R.C. 2141.419.
 {¶ 24} But we find a more important issue. R.C. 2151.419(A)(2)(a) provides that a court need not make a determination that the agency made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to return the child to the child's home, if the parent from whom the child was removed has been convicted of or pleaded guilty to certain offenses. The statute lists the offenses of felonious assault,[8] aggravated assault,[9] or assault,[10] or substantially similar offenses "when the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense."[11] *Page 9 
 {¶ 25} We find no case law on the issue. But we believe that Ohio Adm. Code 5101:2-42-18(F) must be read in tandem with all the language in R.C. 2151.419. Thus, an assault conviction only prevents placement if the victim is one of the children specified in the statute. In this case, the victim in Tony Alexander's assault conviction was an adult male. Therefore, that conviction would not have automatically excluded placement of the children with the Alexanders.
 {¶ 26} Consequently, we reverse the trial court's judgment granting permanent custody of the Needom girls to HCJFS. We remand the case to the trial court for further proceedings, including the completion of the Alexanders' home study. We realize that the record shows that HCJFS had other concerns about the Alexanders beyond the assault conviction, which a completed home study might answer. We do not hold that a grant of permanent custody would not be appropriate in the future, that the Alexanders should automatically receive custody, or that the girls should be immediately placed with them.
 IV. Summary {¶ 27} In sum, we overrule the assignments of error as they relate to the award of custody of the Eicher boys to the Eichers, and we affirm that part of the trial court's judgment. We sustain the assignments of error as they relate to the award of permanent custody of the Needom girls. We reverse that part of the trial court's judgment and remand the case for further proceedings.
Judgment affirmed in part and reversed in part, and cause remanded.
PAINTER, P.J., and HENDON, J., concur.
[1] In re Wilkenson (Oct. 12, 2001), 1st Dist. Nos. C-010402 and C-010408.
[2] In re Allah, 1st Dist. No. C-040239, 2005-Ohio-1182, ¶ 9-11;Wilkenson, supra; In re Patterson (1999), 134 Ohio App.3d 119, 130,730 N.E.2d 439.
[3] R.C. 2151.414(D); In re Graham, 167 Ohio App.3d 284,2006-Ohio-3170, 854 N.E.2d 1126, ¶ 19; Wilkenson, supra.
[4] See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218,450 N.E.2d 1140; Wilkenson, supra; In re Nice, 141 Ohio App.3d 445, 455,2001-Ohio-3214, 751 N.E.2d 552.
[5] R.C. 2151.414(B)(1).
[6] Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus; In re Kennedy, 1st Dist. No. C-060758,2007-Ohio-548, ¶ 21.
[7] See R.C. 2151.414(B)(1); Graham, supra, at ¶ 18.
[8] R.C. 2903.11.
[9] R.C. 2903.12.
[10] R.C. 2903.13.
[11] R.C. 2151.419(A)(2)(a)(ii). *Page 1