[Cite as *In re A.C.*, 2015-Ohio-153.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


IN RE:  A.C.  :  APPEAL NO. C-140273
TRIAL NO. F03-669Z

:  *O P I N I O N.*


Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: January 21, 2014


*Teresa L. Stansel*, for Appellant Mother,

*ProKids, Inc.*, and *Paul Hunt*, Guardian ad Litem and Court Appointed Special Advocate for A.C.,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Elizabeth Sundermann*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services.


**Please note:  this case has been removed from the accelerated calendar.**

**SYLVIA S. HENDON, Presiding Judge.**

{¶1}   Mother has appealed from the judgment of the Hamilton County Juvenile Court granting legal custody of her son A.C. to Charles Pelcha. Because the trial court did not abuse its discretion in determining that an award of custody to Pelcha was in the best interest of A.C., we affirm that court's judgment.

### *Facts and Procedure*

{¶2}   Immediately following his birth in January of 2008, A.C. was placed in the temporary custody of the Hamilton County Department of Job and Family Services ("JFS") until his father was granted legal custody of him in August of 2008. A.C. resided with his father until September of 2010, when he was removed from his father's home and placed in the care of his paternal grandmother following an incident of domestic violence between father and father's girlfriend. Mother filed a motion seeking custody of A.C. around this same time. In February of 2011, JFS moved for an interim order of custody of A.C. Both mother and father were in agreement with an interim grant of custody to JFS. In June of 2011, A.C. was adjudicated abused and dependent. JFS's interim order of custody was terminated, and A.C. was committed to the temporary custody of the agency. On January 27, 2012, A.C. was placed with family friend Charles Pelcha. JFS was granted two extensions of temporary custody, and, in January of 2013, the agency filed a motion seeking to terminate the temporary custody and have legal custody of A.C. awarded to Pelcha.

{¶3}   A juvenile court magistrate conducted a hearing on both mother's motion for custody and JFS's motion to have legal custody awarded to Pelcha. In

April of 2013, the magistrate issued a written decision denying mother's motion for custody and granting legal custody of A.C. to Pelcha. Nearly one year later, the trial court issued an entry adopting the magistrate's decision and finding that it was in the best interest of A.C. to be placed in the legal custody of Pelcha.

{¶4} Mother now appeals, raising two assignments of error for our review. In her first assignment of error, she argues that the trial court abused its discretion by granting JFS's motion to award legal custody to a nonrelative. In her second assignment of error, mother argues that the trial court abused its discretion by adopting the magistrate's decision where there was insufficient evidence presented to show that an award of custody to a nonrelative was in the best interest of the child. Because these arguments are related, we address them together.

### *Best-Interest Analysis*

{¶5} Pursuant to R.C. 2151.353, after a child is adjudicated abused, neglected, or dependent, the trial court may "[a]ward legal custody of the child to * * * any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings." R.C. 2151.353(A)(3). When determining to whom legal custody should be awarded, the juvenile court should base its determination on the best interest of the child. *See In re Allah*, 1st Dist. Hamilton No. C-040239, 2005-Ohio-1182, ¶ 10. We will not reverse the trial court's award of custody absent an abuse of discretion. *See In re Needom*, 1st Dist. Hamilton Nos. C-080107 and C-080121, 2008-Ohio-2196, ¶ 14. An abuse of discretion "connotes more than an error of law or of judgment; it implies

an unreasonable, arbitrary or unconscionable attitude on the part of the court." *See Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437 N.E.2d 1199 (1982).

{¶6} In determining the best interest of the child, the best-interest factors delineated in R.C. 2151.414 are instructive. *See In re Needom*, 1st Dist. Hamilton Nos. C-080107 and C-080121, 2008-Ohio-2196, at ¶ 15. These factors include the child's interactions and relationships with his or her parents, siblings, relatives, and foster caregivers or any other out-of-home providers; the wishes of the child, expressed directly through the child or through the child's guardian ad litem; the custodial history of the child; and the child's need for a legally secure placement. *See* R.C. 2151.414(D)(1).

{¶7} Following our review of the record, we find that it contains ample evidence to support the trial court's determination that it was in A.C.'s best interest to be placed in the legal custody of Pelcha. At the time of the hearing, Pelcha had been caring for A.C. for over a year in a safe and secure home. The record demonstrates that A.C. and Pelcha have a very close relationship, and that A.C. often preferred spending time with Pelcha to attending visitation with his mother. Although Pelcha had a preexisting relationship with father, he willingly facilitated visitation between mother and A.C. A.C. had been in the custody of JFS for two years at the time that the custody hearing began, and both prior to and during that period he had been placed in the care of various providers. He clearly had the need for a legally secure placement.

{¶8} Mother asserts that a grant of legal custody to Pelcha was not in A.C.'s best interest because Pelcha would not be able to effectively protect A.C. from father. The record belies mother's argument. Pelcha testified at the custody hearing that,

despite his close relationship with father, he would be capable of setting boundaries, and that he had no concerns that father would physically intimidate him. He further stated that he would be willing to provide mother and father equal access to A.C., and that he would be willing to listen to their input on issues like religious upbringing.

{¶9} Mother contends that it was in A.C.'s best interest to be placed in her custody, and she cites to her compliance with the case plan implemented by JFS to support her argument. The record contains evidence that mother had completed parenting classes, had followed through with her mental-health treatment, and had maintained a stable income and housing. But the record further demonstrates that, despite mother's compliance with her case plan, two JFS caseworkers testified that they had concerns that mother could not take care of A.C. on a daily basis. Further, Mother's ability to effectively parent A.C. is not conclusive to the trial court's determination that a grant of legal custody to Pelcha was in the best interest of A.C. Once a child has been adjudicated abused, neglected, or dependent, a trial court need not first find that a noncustodial parent is unsuitable before placing a child with a nonparent or nonrelative. *See In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 24.

{¶10} The trial court's decision that a grant of legal custody to Pelcha was in A.C.'s best interest was supported by competent, credible evidence, and was in no manner arbitrary, unreasonable, or unconscionable. Mother's first and second assignments of error are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.


**FISCHER** and **DEWINE, JJ.,** concur.

5

**Please note:**

  The court has recorded its own entry on the date of the release of this opinion.