[Cite as *In re M.*, 2017-Ohio-1431.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| IN RE: M., R., & H. CHILDREN. | : | APPEAL NO. C-170008 |
| | | TRIAL NO. F09-2583X |
| | : | *O P I N I O N.* |


Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 19, 2017


*Christopher P. Kapsal*, for Appellant Mother,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Lee Slocum*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Nicholas Varney,* Assistant Public Defender, Guardian Ad Litem.

**DETERS, Judge.**

{¶1}   Mother appeals the decision of the Hamilton County Juvenile Court granting permanent custody of one of her children to appellee Hamilton County Department of Job and Family Services ("HCJFS") and granting legal custody of two of her children to other individuals.   We find no merit in her sole assignment of error, and we affirm the juvenile court's judgment.

### I. Factual Background

{¶2}   The record shows that in 2009, HCJFS sought temporary custody of then two-year-old L.M. and one-year-old R.R. because mother had stated that she was unable to care for the children and because R.R. had been abused while in the care of his father.   The juvenile court adjudicated them abused and dependent.   On July 19, 2012, the court ordered that custody be returned to mother because she had been "successfully engaging in case plan services" and had obtained housing, and extended visitation with the children had gone well.

{¶3}   On February 20, 2013, the children were removed from mother's home after mother had left L.M., then five years old, R.R., then four years old, and two younger siblings home alone.   Mother was eventually convicted of two counts of child endangerment as a result of that incident.   The juvenile court granted interim custody of the children to HCJFS.   On January 23, 2014, the juvenile court adjudicated the children neglected and dependent and awarded temporary custody to HCJFS.   Temporary custody was extended twice with the goal of reunification with mother.

{¶4}   On January 14, 2015, mother gave birth to H.H, who tested positive for THC, the active ingredient in marijuana.   One day later, the court granted interim

2

custody of H.H. to HCJFS. Mother acknowledged smoking marijuana while she was pregnant with H.H. HCJFS subsequently filed a complaint alleging that H.H. was neglected and abused and asking the juvenile court to grant temporary custody of H.H. to the agency.

{¶5} R.R. was eventually placed with J.D., his paternal grandmother, in North Carolina. R.R. thrived in that placement. He had had issues with hyperactivity and speech difficulties, both of which improved significantly. J.D. filed a petition for legal custody of R.R. HCJFS also filed a motion asking the court to grant legal custody of R.R. to J.D.

{¶6} H.H. was placed with T.P., who was the paternal grandmother of two of mother's other children. T.P. had legal custody of those two children, who were H.H.'s biological siblings. Those siblings were doing well in T.P.'s care. T.P. filed a petition for legal custody of H.H., and HCJFS filed a motion asking the court to grant legal custody of the child to T.P., even though she was not H.H.'s biological relative.

{¶7} On February 10, 2015, HCJFS filed a motion for permanent custody of L.M. She had remained in foster care as she had no biological relatives with whom she could be placed. She had been moved from several foster homes because of severe behavioral problems.

{¶8} At consolidated hearings, the juvenile court heard evidence on all of the outstanding issues. Evidence presented at the hearing showed that immediately after the children were removed from the home, mother went to Youngstown, Ohio to find work. She did not visit the children for several months. Eventually, she returned to the Hamilton County area. Though HCJFS claimed she was homeless at the time of the hearing, the evidence showed that she was living with her sister in a

three-bedroom house with room for the children. Nevertheless, mother acknowledged that stable housing had been an issue.

{¶9} Mother's visits with the children were still inconsistent after she had returned from Youngstown. Mother contended that inconsistency was due to her work schedule. She did not visit R.R. in North Carolina, although she claimed that she was able to video chat with him through his father, who also lived in North Carolina.

{¶10} When mother visited with L.M., who had severe behavioral problems, mother had difficulty setting limits on L.M.'s behavior. While L.M. seemed to enjoy the visits with her mother, her behavior regressed afterward. L.M. even began urinating on herself after mother told her L.M. would "come home" because L.M. was "getting used to the smell again." L.M. had issues with explosive behavior and aggressiveness and defiance, and needed permanence and consistency to address those issues.

{¶11} Mother did engage in services upon her return to the area, including substance-abuse treatment and parenting classes. Nevertheless, she had several positive urine screens, and she had refused to submit to one screen. Even though she had been attending therapy, she still had problems with regulating her emotions and impulse control. According to the social workers, she would get upset and "explode verbally, using profanity," or "had to leave whatever she was doing."

{¶12} After hearing the evidence, the magistrate recommended that H.H. be adjudicated a dependent child. He also recommended that legal custody of H.H. be awarded to T.P. and that legal custody of R.R. be awarded to J.D. Finally, the magistrate recommended that permanent custody of L.M. be granted to HCJFS.

4

Mother filed objections to the magistrate's decision. The juvenile court denied the objections and adopted the magistrate's decision. This appeal followed.

{¶13} In her sole assignment of error, mother contends that the juvenile court erred in adopting the magistrate's decision terminating mother's parental rights, because that decision was against the manifest weight of the evidence. She argues that the court's decision granting permanent custody of L.M. to HCJFS and granting legal custody of R.R. and H.H. to other individuals was not supported by competent, credible evidence. This assignment of error is not well taken.

{¶14} Because we review the juvenile court's decision to grant permanent custody of L.M. to HCJFS and its decision to grant legal custody of R.R. and H.H. to other individuals under different standards, we discuss them separately. We begin with the permanent-custody decision.

### II.  Permanent Custody

{¶15} We first note that R.C. 2151.353 and 2151.414, the applicable statutes, were amended effective October 12, 2016. Generally, courts should apply the version of the statute in effect at the time the motion for permanent custody was filed. *In re C.E. 1*, 1st Dist. Hamilton No. C-140674, 2015-Ohio-5710, ¶ 8. The motion for permanent custody was filed on February 10, 2015, so we apply the versions of the statutes in effect at that time.

{¶16} Former R.C. 2151.353(A)(4) provided that if a child was adjudicated an abused, neglected, or dependent child, the court could

> commit the child to the permanent custody of a public children
> services agency * * * if it determines in accordance with division (E) of
> section 2151.414 of the Revised Code that the child cannot be placed
> with one of the child's parents within a reasonable time or should not

5

be placed with either parent and determines in accordance with division (D)(1) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child.

{¶17} Former R.C. 2151.414(B) provided that the juvenile court could grant permanent custody of a child to a public children services agency if it found by clear and convincing evidence that (1) permanent custody is in the best interest of the child and (2) that one of the five conditions in former R.C. 2151.414(B)(1)(a) through (e) apply. Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985). While the juvenile court must have found that both prongs were supported by clear and convincing evidence, we will not substitute our judgment for that of the juvenile court where some competent credible evidence supported the essential elements of the case. *C.E. 1* at ¶ 9; *In re C.H.*, 1st Dist. Hamilton Nos. C-140415 and C-140416, 2014-Ohio-4821, ¶ 18.

{¶18} The agency proceeded under former R.C. 2151.414(B)(1)(a). *See In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 27. It provided that the court could grant permanent custody to the agency if it determined that "[t]he child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period" and the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."

{¶19} Former R.C. 2151.414(E) provided that in determining whether a child could not be placed with either parent within a reasonable time or should not be

placed with the parents, the court should consider all relevant evidence. If the court found by clear and convincing evidence that one or more of the 16 specified conditions existed, it should "enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]"

{¶20} The juvenile court found that following the placement of the child outside the home and notwithstanding reasonable case planning and diligent efforts to assist the parents to remedy the problems that had initially caused the child to be placed outside the home, the parents had failed continuously and repeatedly to remedy the conditions causing the child to be placed outside the home. *See* former R.C. 2151.414(E)(1). It also found that the parents had demonstrated a lack of commitment toward the child by failing to regularly support, visit or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate, permanent home for the child. *See* former R.C. 2151.414(E)(4).

{¶21} Those findings were supported by clear and convincing evidence. L.M. and her siblings have been in the care of HCJFS on and off since 2009. The juvenile court, under a recommendation from HCJFS, returned custody to mother. HCJFS removed the children from her custody when it found that she had left them alone, and that she had marijuana and opiates in her system. Mother made very little progress on her issues for a long time and failed to visit the children consistently.

{¶22} Late in the proceedings, mother started using services, but still had not remedied the problems that had caused the children to be removed from the home. In mother's favor, she made some progress and had been able to hold a job. She was not homeless as the agency had contended, and did have a fairly stable living arrangement with her sister. Nevertheless, mother continued to have issues with

7

substance abuse and impulse control, despite treatment. The dispositive issue is not whether the parent has substantially complied with the case plan, but whether the parent has substantially remedied the conditions that led to the child's removal. *C.E. 1,* 1st Dist. Hamilton No. C-140674, 2015-Ohio-5710, at ¶ 20.

{¶23} The only remaining issue is whether granting the motion for permanent custody was in L.M.'s best interest. *See C.E. 1* at ¶ 11; *In re L.W.J.*, 1st Dist. Hamilton Nos. C-140282 and C-140283, 2014-Ohio-4181, ¶ 26. Former R.C. 2151.414(D)(1) provided that in determining the child's best interests, the court should have considered "all relevant factors," including (1) the child's interaction with parents, siblings, relatives, foster caregivers and out-of-home providers, and any person who could have significantly affected the child; (2) the wishes of the child, as expressed by the child or the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for legally secure placement and the type of placement that could have been achieved without a grant of permanent custody; and (5) whether any of the factors under former R.C. 2151.414(E)(7) to (11) applied. *See C.E. 1* at ¶ 11.

{¶24} The factors listed in former 2151.414(E)(7) to (11) included whether (1) the parent had been convicted or pleaded guilty to certain criminal offenses; (2) the parent had repeatedly withheld medical treatment or food from the child when the parent had means to provide the treatment and food; (3) the parent had placed the child at substantial risk of harm two or more times due to alcohol or drug abuse or had refused to participate in further treatment two or more times; (4) the parent had abandoned the child; and (5) the parent had had parental rights involuntarily terminated with respect to a sibling of the child, and the parent had failed to provide

clear and convincing evidence that the parent can provide a legally secure permanent placement and adequate care for the health, welfare and safety of the child.

{¶25} The record demonstrates that the trial court considered all of the relevant factors. The evidence showed that mother could not provide a legally secure permanent placement for L.M. or adequately provide for her health, safety, and welfare.

{¶26} L.M. had serious special needs. Many of L.M.'s issues stemmed from L.M. being "parentified," because she was left to care for her younger siblings at a young age. L.M. had to be moved several times to different foster homes because of her behavior. She was bonded with her mother, but acted out after visits. L.M. even started urinating on herself because mother stated that L.M. would come home, and L.M. felt that she needed to get used to the smell. L.M. needed permanence to address her issues. Her father had only been sporadically involved with her, and she had no other relatives who could care for her. L.M.'s guardian ad litem recommended permanent custody to give her the permanence that she needs.

{¶27} Clear and convincing evidence supported the juvenile court's decision to grant permanent custody of L.M. to HCJFS, and it was not against the manifest weight of the evidence. *See Eastley v Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12. Therefore, this court will not reverse it.

### III. Legal Custody

{¶28} Mother also argues that the juvenile court should not have granted legal custody of R.R. to J.D. or H.H. to T.P. The clear-and-convincing standard used in cases of permanent custody does not apply in cases where the court grants legal custody to a person other than the parents. As we have previously stated, R.C.

2151.353, the applicable statute, has been amended. We apply the version of the statute in effect on the dates the motions for legal custody were filed.

{¶29} We note that mother argues that the juvenile court used the analysis under R.C. 2151.414 for permanent-custody cases when ruling on the motions for legal custody. The standard for granting permanent custody to a public children services agency is a much more rigorous standard than the standard for granting legal custody to a person besides a parent without terminating that parent's parental rights. *See In re A.W.*, 1st Dist. Hamilton No. C-140142, 2015-Ohio-489, ¶ 9-10; *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46. Consequently, the legal-custody standard is subsumed in the permanent-custody standard, and mother was not prejudiced.

{¶30} Under former R.C. 2151.353(A)(3), if the juvenile court found a child to be abused, dependent or neglected, it could award legal custody to any person who had filed a petition for custody. *In re Needom*, 1st Dist. Hamilton Nos. C-080107 and C-080121, 2008-Ohio-2196, ¶ 14. The juvenile court has discretion to determine what placement option is in the child's best interest, and an appellate court will not reverse its decision absent an abuse of discretion. *In re Patterson*, 1st Dist. Hamilton No. C-090311, 2010-Ohio-766, ¶ 15. An abuse of discretion exists if the court's decision regarding the child's best interest is not supported by competent, credible evidence. *In re D.M.*, 1st Dist. Hamilton No. C-140648, 2015-Ohio-3853, ¶ 11.

{¶31} The juvenile court must exercise its jurisdiction in child-custody matters in accordance with R.C. 3109.04, the statute applicable to custody matters in the domestic relations court. *See D.M* at ¶ 12. R.C. 3109.04(F) requires the court to consider all relevant factors, including (1) the parents' wishes; (2) the child's wishes; (3) the child's interaction and interrelationship with the child's parents, siblings, and

any other person who may significantly affect the child's best interest; (4) the child's adjustment to home, school and community; (5) the mental and physical health of all persons involved in the situation; (6) the parent more likely to honor and facilitate court-approved parenting-time rights or visitation and companionship rights; and (7) whether either parent has failed to make child-support payments.

{¶32} In this case, the evidence showed that mother was not in a positon to care for any of her children. It also showed that R.R. was thriving in J.D.'s care. As the guardian ad litem stated, "He was like a different child." His undesirable behaviors had disappeared. J.D. understood that mother could still have visitation with the child, although mother had not yet been to North Carolina.

{¶33} As to H.H., she was born with marijuana in her system. As soon as she was released from the hospital, she was placed with T.P, who already had custody of two of mother's other children. Thus, H.H. was placed with her biological siblings. The evidence showed that T.P. diligently cared for her, and that she was thriving. T.P. also indicated that she understood that mother still had visitation rights, and the record showed that mother had visited with H.H.

{¶34} The record shows that the court considered all relevant factors in determining what award of custody was in the children's best interests. The weight to be given to those individual factors was within the court's discretion. An appellate court must defer to the trial court's findings "regarding the weight to be given to any evidence because the trial court is in the best position to make that determination." *Linde v. Linde*, 1st Dist. Hamilton No. C-940944, 1996 WL 97563, *4 (Mar. 6, 1996), citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶35} Competent, credible evidence supported the trial court's findings that it was in R.R.'s best interest to award custody to J.D., and in H.H.'s best interest to

award custody to T.P., and those decisions were not against the manifest weight of the evidence. *See Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 12. This court will not disturb the juvenile court's decisions. *See Patterson*, 1st Dist. Hamilton No. C-090311, 2010-Ohio-766, at ¶ 15 and 20; *Needom*, 1st Dist. Hamilton Nos. C-080107 and C-080121, 2008-Ohio-2196, at ¶ 19.

{¶36} In sum, we find no error in the juvenile court's decisions. Consequently, we overrule mother's assignment of error and affirm the juvenile court's judgment.

Judgment affirmed.

**CUNNINGHAM, P.J.,** and **MYERS, J.,** concur.

Please note:

The court has recorded its own entry this date.