[Cite as *In re E.B.*, 2019-Ohio-3943.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: E.B. | : | APPEAL NOS. C-190050 |
| | | C-190054 |
| | : | TRIAL NO. F09-1700x |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed in C-190050; Appeal Dismissed in C-190054

Date of Judgment Entry on Appeal: September 27, 2019

*Raymond T. Faller*, Hamilton County Public Defender, and *Elizabeth Stringer*, Assistant Public Defender, Guardian ad Litem for appellant E.B.,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Nicholas Varney*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Chris Kapsal*, for Appellee Mother.

1

**BERGERON, Judge.**

{¶1} This child-custody dispute arises in an unusual posture—the appellant guardian ad litem ("GAL") for the child insists that the child be placed in the permanent custody of the Hamilton County Department of Job and Family Services ("HCJFS"). But HCJFS is holding up its hands, resisting that result. It instead desires that the child live with her maternal cousin, which is exactly what the juvenile court ordered. Upon a comprehensive review of the record, we affirm the juvenile court's judgment and dissolve the stay that we previously issued.

I.

{¶2} In July 2016, just a few days after E.B.'s birth, HCJFS initiated a complaint requesting interim custody of her due to, among other things, Mother's substance abuse, untreated mental health issues, unstable housing, and domestic violence incidents, as well as E.B.'s positive test for marijuana upon birth. After a hearing, the court awarded that relief, thereby placing E.B. in foster care. A couple of months later, the court adjudicated E.B. abused and dependent, committing her to the temporary custody of HCJFS.

{¶3} As reunification efforts proceeded, Mother continued to struggle with depression, bipolar disorder, and substance abuse, declining to take any medications for her mental health concerns. As a result, in June 2017, all parties agreed to extend temporary custody to January 2018, and the court granted that request. Subsequently, in August 2017, Mother's maternal (second) cousin, Afia Thornton, entered upon the custody scene, filing a legal custody petition for E.B. A home study ensued, yet because of various delays, the study did not begin until January 2018. In the meantime, due to the pending expiration of the first extension of temporary custody, HCJFS moved to extend temporary custody again in December 2017, with the hope of approving the home study and commencing visits.

Unwilling to afford Ms. Thornton that opportunity, a few days after HCJFS's filing, GAL moved to modify temporary custody to permanent custody.

{¶4} Finally, in March 2018, HCJFS approved Ms. Thornton's home study, and it promptly filed a case plan, which included supervised visits between E.B. and Ms. Thornton to foster a relationship. But GAL interceded and objected, triggering the need for a hearing before the magistrate. Agreeing with GAL's objections, the court halted Ms. Thornton's visits, but noted that "the lack of visitation with Ms. Thornton and [E.B.] would not be considered as a barrier to her custody petition." Because of the parties' unavailability for an expedited hearing, the earliest time to address GAL's objections for the case plan was the previously scheduled date for the trial. Therefore, by the time of trial, the magistrate had before her a trio of competing motions—HCJFS's motion to extend temporary custody, Ms. Thornton's legal custody petition, and GAL's motion for permanent custody.

{¶5} At the three-day trial, while testimony concerning Ms. Thornton's delayed application and her husband's criminal record emerged as focal points, the court also heard from the foster mother and received conflicting testimony from HCJFS employees. After considering all the evidence, the magistrate accepted HCJFS's recommendation and granted legal custody of E.B. to Ms. Thornton, thereby denying GAL's motion seeking permanent custody and dismissing HCJFS's motion to extend temporary custody. While GAL lodged objections to the magistrate's decision, the juvenile court ultimately upheld the decision granting legal custody to Ms. Thornton. Yet the court modified the magistrate's decision, requiring E.B. to remain in custody of HCJFS during the transition plan, allowing E.B. a brief period of time to adjust from foster care to Ms. Thornton.

{¶6} GAL now appeals this order granting legal custody to Ms. Thornton, presenting a two-fold argument. First, as to the first and second assignments of error, GAL

3

challenges the juvenile court's decision to grant legal custody to Ms. Thornton, claiming it is in the best interests of E.B. to remain in the permanent custody of HCJFS (notably, over HCJFS's own objections) and asserting the court failed to apply the statutorily-required best interest factors. And second, in her third assignment of error, GAL insists that the juvenile court exceeded the bounds of its jurisdictional authority.

II.

{¶7} Before turning to the merits of this appeal, we first address a challenge to our own jurisdiction. Mother asserts that the juvenile court's decision does not constitute a final, appealable order, and she requests that we dismiss this appeal for lack of appellate jurisdiction. Because Article IV, Section 3(B)(2) of the Ohio Constitution requires that all orders or judgments of the court be final before appellate consideration, we begin our review addressing Mother's concerns.

{¶8} The familiar (albeit sometimes confounding) R.C. 2505.02(B) serves as our guide in this analysis, recognizing an order as final when it "affects a substantial right made in a special proceeding or upon a summary application in an action after judgment[.]" R.C. 2505.02(B)(2). Because the Ohio Supreme Court previously held that custody hearings are special proceedings under R.C. 2505.02(B)(2), our review turns on whether GAL has a "substantial right" implicated by the order at hand. *See In re Adams*, 115 Ohio St.3d 86, 2007-Ohio-4840, 873 N.E.2d 886, ¶ 43 ("Actions in juvenile court that are brought pursuant to statute to temporarily or permanently terminate parental rights are special proceedings, as such actions were not known at common law."); *In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, 951 N.E.2d 398, ¶ 12 ("We have previously held that custody hearings are special proceedings."). "Substantial right," under R.C. 2505.02(A)(1), is a "right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of

procedure entitles a person to enforce or protect." In other words, a "substantial right is a legal right enforced and protected by law." *In re C.B.* at ¶ 13.

{¶9} It is well-established that a GAL possesses a " 'statutory right to ensure that the best interests of the child are enforced and protected in the permanent custody proceeding,' " and thus a juvenile court's order affecting this "substantial right" constitutes a final, appealable order. *In re S Children*, 2018-Ohio-5010, 126 N.E.3d 239, ¶ 32 (1st Dist.), quoting *In re C.B.* at ¶ 14 (noting Sup.R. 48(D)(1) and (7) and R.C. 2151.281(I) establish "the unique role the guardian ad litem has in a permanent-custody proceeding with respect to ensuring that the best interests of a child are considered before custody modifications are made[.]"). Although Mother recognizes GAL's substantial statutory right, she nevertheless maintains that because the juvenile court here did not immediately order legal custody to Ms. Thornton, but instead directed the magistrate to determine the effective date of legal custody, the court merely extended temporary custody along the same lines as did the court in *In re Adams* (holding that "a children-services agency does not have a substantial right in the permanent custody of children based on the fact that the agency has temporary custody of the children."). *In re Adams* at ¶ 42. In other words, she believes that wrinkle in the order transformed an otherwise final order into an interlocutory, nonfinal order.

{¶10} But the premise of her argument rests on a misreading of *Adams*, where the juvenile court denied permanent custody to the child services agency, but continued temporary custody. Because "the continuation of temporary custody [did] not foreclose appropriate relief in the future" for the agency, the Supreme Court deemed the order non-final. *Id.* at ¶ 44. Conversely, here, the court did not deny permanent custody and continue temporary custody for an indefinite period, but instead denied permanent custody, dismissed HCJFS's motion to extend temporary custody, and awarded legal custody to Ms.

Thornton, directing, for a limited period of time, a transition period to help E.B. get acclimated into her new environment. Therefore, unlike *Adams*, the juvenile court's award of legal custody to Ms. Thornton *does* foreclose GAL's appropriate relief in the future, ordering E.B.'s placement with a custodian to whom GAL objects.

{¶11} We find this case more akin to our recent decision in *In re L.A.*, 2014-Ohio-894, 9 N.E.3d 525 (1st Dist.). In that case, the juvenile court rejected the magistrate's decision to award permanent custody to HCJFS, remanding the case for a new hearing to evaluate whether the grandparents or parents would be a proper placement for the children. Even after specifically terminating HCJFS's temporary custody of the children, the court ordered that the children remain in foster care under orders of supervision while HCJFS evaluated the appropriate legal custodian. *Id.* at ¶ 2. Despite HCJFS's continued custody of the children through foster care, this court allowed HCJFS and GAL's appeal of the court's order, recognizing GAL had "a statutory obligation to protect the children's best interests and * * * it is not in a child's best interest to be left without, at the very least, a temporary safe and secure placement." *Id.* at ¶ 7. This case presents a stronger claim to finality than *L.A.*, where the court failed to award the child to anyone, because the juvenile court in the case at hand awarded legal custody of E.B. to Ms. Thornton, only postponing the effective date of legal custody to allow a smooth transition for E.B. (which should be in everyone's best interests).

{¶12} Based on our analysis above, we conclude that the juvenile court's order is final under R.C. 2505.02(B), and we accordingly have jurisdiction to review GAL's appeal of the juvenile court's judgement. With jurisdiction confirmed, we turn to the substance of GAL's appeal.

III.

{¶13} We begin our analysis of the merits by considering GAL's first and second assignments of error, where she presents an array of arguments all targeting the juvenile court's decision to deny GAL's motion for permanent custody and award legal custody to Ms. Thornton. When reviewing a juvenile court's grant of legal custody, we apply an abuse of discretion standard and consider whether the court's "best-interest determination is not supported by competent and credible evidence." *In re F.B.D.*, 1st Dist. Hamilton No. C-180356, 2019-Ohio-2562, ¶ 11. GAL resists the abuse of discretion standard, but in doing so offers cases discussing *permanent* custody rather than *legal* custody. *See In re D.T.*, 8th Dist. Cuyahoga Nos. 100970 and 100971, 2014-Ohio-4818, ¶ 19-22 (distinguishing between legal and permanent custody). As this court has determined before, in the legal custody context, abuse of discretion applies. *In re F.B.D.* at ¶ 11.

{¶14} Pursuant to R.C. 2151.353(A)(3), if the court adjudicates a child abused, neglected, or dependent, then it may grant legal custody to a parent or another person who requests custody. In doing so, the "court must consider the best interests of the child, using R.C. 2151.414(D)(1) as guidance." *In re Z.*, 1st Dist. Hamilton No. C-190026, 2019-Ohio-1617, ¶ 29. And despite GAL's assertion, the court is not limited to only the factors set forth in R.C. 2151.414(D)(1)(a)-(e), nor must it apply those factors in a mechanical fashion. *See* R.C. 2151.414(D)(1) ("the court shall consider all relevant factors, including, but not limited to * * *."); *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56 ("The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors."). Juvenile courts enjoy more flexibility in the best interest analysis in legal custody cases as compared to permanent custody. *In re D.T.* at ¶ 19-20 ("Unlike permanent custody cases in which the trial court is guided by the factors outlined in R.C. 2151.414(D) before

terminating parental rights and granting permanent custody, R.C. 2151.353(A)(3) does not provide factors the court should consider in determining the child's best interest in a motion for legal custody.").

{¶15}  Using the R.C. 2151.414(D) factors as a guide (and because that is how GAL frames this appeal), we begin with R.C. 2151.414(D)(1)(a), which concerns "[t]he interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child[.]"  As to this first factor, GAL maintains that the court failed to afford proper consideration to Ms. Thornton's lack of relationship with E.B.—but our review of the record shows to the contrary.  The juvenile court acknowledged multiple times throughout its decision that Ms. Thornton had yet to establish consistent visitations with the child, but with the caveat that GAL's objections ensured that result.   And thus, contrary to GAL's allegations, the court did not inappropriately focus on "prospective relationships" rather than existing ones, but instead recognized the reality of the present situation as it walked through the best interest analysis.

{¶16}   Moreover, after noting E.B.'s nonexistent relationship with her alleged Father and sparse visits from Mother, the court acknowledged E.B.'s strong bond with her foster parents.  Additionally, the court considered the fact that Mother's other four children lived with the maternal grandparents, weighing this, amongst the other factors, in favor of awarding Ms. Thornton (maternal cousin) legal custody.

{¶17}  Turning to "the wishes of the child," the court certainly considered GAL's position and her recommendation to grant HCJFS permanent custody, since it was over HCJFS's own objections.  *See* R.C. 2151.414(D)(1)(b).  Additionally, the juvenile court

8

properly considered the custodial history of E.B., emphasizing her time in HCJFS's custody and E.B.'s placement with the same foster family since birth. *See* R.C. 2151.414(D)(1)(c).

{¶18} R.C. 2151.414(D)(1)(d) concerns the child's "need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" As to this factor, GAL presents interrelated arguments: first, she believes the court improperly placed a thumb on the scale based on Ms. Thornton's biological relationship with E.B., and second, GAL attacks the security of the placement given Ms. Thornton's husband's criminal history.

{¶19} To support her first argument, GAL directs our attention to *Schaefer*, emphasizing the "nearly identical" facts. Yet *Schaefer* faulted an appellate court for creating a statutory duty upon "the juvenile court [to] determine by clear and convincing evidence that 'termination of appellant's parental rights was not only a necessary option, but also the only option' * * * [and] that no suitable relative was available for placement." *Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, at ¶ 64. Confronted with these extra requirements, the Supreme Court found the "heightened importance that the appellate court assigned to R.C. 2151.414(D)(4) [was] not required by or even hinted at in the statute, nor [was] the trial court required to credit evidence in support of maintaining the parental relationship when evidence supporting termination outweighs it clearly and convincingly." *Id.* at ¶ 56. At its core, *Schaefer* involved an appellate court recalibrating the scales when it was unsatisfied with the balancing exercise conducted by the juvenile court, which evokes parallels to what GAL entreats us to do.

{¶20} Unlike in *Schaefer*, the juvenile court here did not fashion "the availability of a placement that would not require a termination of parental rights" as "an all-controlling factor." *See id.* at ¶ 64. Instead, the court weighed this factor exactly as permitted under the

statute, emphasizing in its decision that placing E.B. with Ms. Thornton provides an option without granting permanent custody, while also acknowledging the inchoate nature of their relationship (largely attributable to factors beyond their control). As to Ms. Thornton's tardy custody petition, the court considered and apparently found credible her testimony, wherein she explained that she did not originally request custody shortly after E.B.'s birth because she understood Mother to be making progress towards reunification, but once appraised of the actual situation, she immediately sought custody—a year prior to the temporary custody expiring.

{¶21} Further, after documenting the series of procedural hurdles that precluded Ms. Thornton from visits, the juvenile court became comfortable that E.B. could bond with Ms. Thornton. E.B. showed an ability to bond with caregivers, and the juvenile court had before it credible testimony by Ms. Thornton of her commitment to raising E.B., how her work schedule would enable her to spend substantial time with E.B., and her desire to keep E.B. anchored in her natural family. Ms. Thornton conveyed the same points to the HCJFS employee who interviewed her, who walked away convinced (as did the juvenile court) of Ms. Thornton's sincerity and her ability to live up to the expectations of caring for E.B. Ms. Thornton did the best she could to demonstrate her commitment and try to foster a relationship with E.B.—our system should be designed to help actual or prospective parents succeed, not bury them with red-tape and trap them in a bureaucratic maze so that they fail. We do not suggest that GAL acted in anything other than good faith in objecting to the opportunity of Ms. Thornton to cultivate a relationship with E.B., but GAL cannot take measures to prevent that relationship from developing and then complain about the juvenile court's assessment of the imperfect record before it.

{¶22} As to Ms. Thornton's blood relationship with E.B., while, to be sure, "[n]o preference exists for family members, other than parents, in custody awards," the court here did not base its decision solely on Ms. Thornton's familial relationship to Mother. *See In re Patterson*, 1st Dist. Hamilton No. C-090311, 2010-Ohio-766, ¶ 16. Instead, the court viewed Ms. Thornton's relative status as one, among a myriad of factors, including the best interest factors noted above, the fact that placement with Ms. Thornton would not sever Mother's parental rights, and that Mother's other children currently reside with the maternal grandparents (thereby facilitating the growth of sibling relationships).

{¶23} We also find sufficient record support for the juvenile court's conclusion that Ms. Thornton would provide a legally secure placement. Before it, the court heard conflicting testimony as to whether Ms. Thornton's home was a legally secure placement for E.B. On one hand, Ms. Davis, the HCJFS kinship assessor who approved Ms. Thornton's home study, offered testimony at trial as to her home study procedures and recommendation, explaining that after her two-hour interview with Ms. Thornton and her husband, her verification of husband's criminal record, and her conversations with others about husband, she found Ms. Thornton's home to be a safe and secure place for E.B. And notably, HCJFS supported Ms. Davis's recommendation. On the other hand, Ms. Graham, the HCJFS caseworker, expressed her personal opinion that Ms. Thornton's husband's criminal record created a dangerous environment, and thus recommended permanent custody be granted to HCJFS (noting the foster family's willingness to adopt). Weighing the credibility of both these opinions (and presumably taking into account that Ms. Davis actually met with Ms. Thornton and her husband, whereas Ms. Graham did not meet with both of them), and hearing from Ms. Thornton herself regarding her husband's distant past

11

(no contacts with the criminal justice system for nine years now), the court, as factfinder, determined that Ms. Thornton will provide a legally secure placement for E.B.

{¶24} In an attempt to poke holes in Ms. Davis's recommendation, GAL also alleges a litany of violations Ms. Davis committed in her home study assessment under Ohio Adm. Code 5101: 2-42-18. Importantly, violations of this code do not have any impact on a trial court's custody decision. *See In re Eicher Children*, 1st Dist. Hamilton Nos. C-080107 and C-080121, 2008-Ohio-2196, ¶ 23 ("[Ohio Adm.Code 5101: 2-42-18] only prevents HCJFS from placing children in a relative's home; it does not apply to the court. Theoretically, a court could still award custody even though the relative or other adult in the home has a conviction identified in R.C. 2141.419."). Accordingly, GAL cannot wield these perceived violations to undermine the juvenile court's conclusion about the security of the placement for E.B. (and even if she could, HCJFS found that the husband's convictions all met the necessary conditions set forth in Ohio Adm.Code 5101: 2-42-18(G), which allows HCJFS to place the child in the residence despite the nonrelative's criminal record).

{¶25} Finally, R.C. 2151.414(D)(1)(e) directs the court to R.C. 2151.414(E)(7) to (11) for the final elements of the best interests analysis. While the court mistakenly found no factors in division (E)(7) to (11) apply, because Mother and the alleged Father failed to have contact with E.B. for over 90 days at a time, R.C. 2151.414(E)(10) indeed applies. But any error here is harmless—this point only goes to show the lack of suitability of Mother as a guardian (a point not really disputed by anyone) rather than addressing Ms. Thornton's application. And, recall, that in a legal custody case, we do not require rigid adherence to each best interest factor. *See In re D.T.*, 8th Dist. Cuyahoga Nos. 100970 and 100971, 2014-Ohio-4818, at ¶ 20 (noting that the statutory best interest factors are "instructive" in a legal custody case).

{¶26} Could the juvenile court have reached a different conclusion on the record before it? Yes. Would we have preferred affording Ms. Thornton an opportunity to develop the relationship with E.B.? Absolutely. But in our review, we find competent evidence supporting the court's decision and see nothing that would constitute an abuse of discretion. For these reasons, we overrule GAL's first and second assignments of error.

IV.

{¶27} Turning to GAL's third assignment of error, she argues that the court stepped beyond the bounds of its jurisdiction by ordering temporary custody indefinitely, specifically citing R.C. 2151.353(G) and (H) in support. But that represents a mischaracterization of the juvenile court's actions. First, we note that R.C. 2151.353(G) prohibits the court from extending an existing temporary custody order beyond two years after the filed complaint. As reflected in the court's order, it did not extend temporary custody, but explicitly dismissed the motion to extend temporary custody, and held "[p]ursuant to O.R.C. section 2151.353 and in the best interest of the child, legal custody of [E.B.] is awarded to [Ms. Thornton]." While the juvenile court did instruct HCJFS to retain custody of E.B. (providing definite instructions to the magistrate as oversight), this was to provide time for "the parties to implement a plan to transition the child out of foster care and into the ca[r]e of [Ms. Thornton] to ensure the least amount of stress to the child under the circumstances." Moreover, contrary to GAL's assertions, transition plans are far from anomalies in custody proceedings. *See In re K.G.*, 1st Dist. Hamilton Nos. C-150013 and C-150014, 2015-Ohio-2383, ¶ 6 ("The trial court sustained the objections and ordered a transitional return of the children to mother under the direction of the magistrate."); *In re S.P.*, 9th Dist. Summit Nos. 24040 and 24043, 2008-Ohio-2672, ¶ 31 ("The trial judge solicited opinion from the parties as to possible transition plans and he considered the

impact of such plans on the best interest of the child."). Likewise, R.C. 2151.353(H)(1) does not apply in this case, as it concerns orders for protective supervision (an option under R.C. 2151.353(A)(1) for the court if the child is adjudicated abused or dependent).

{¶28} The court's direction for a transition plan strikes us as a reasonable way to implement its decision and to mitigate any distress to the child. And recall why we need the transition plan here in the first place—bureaucratic and related delays and obstacles (some at the hand of GAL) prevented what should have occurred in the ordinary course. With that in mind, the court did not exceed its statutory and jurisdictional authority, and we accordingly overrule GAL's third assignment of error.

V.

{¶29} For the foregoing reasons, we find that the juvenile court's determinations as to E.B. were supported by competent and credible evidence and that it did not abuse its discretion. We therefore overrule all three of GAL's assignments of error and affirm the juvenile court's judgment in the appeal numbered C-190050. We also immediately dissolve the stay order that this court previously issued, and we deny all pending motions as moot in light of our disposition. Last, as to the appeal numbered C-190054, because it does not raise any assignments of error, we accordingly dismiss it.

Judgment accordingly.

WINKLER, J., concurs.
MYERS, P.J., dissents.

MYERS, P.J., dissenting.

{¶30} Because I would find that the trial court abused its discretion in determining the best interest of E.B., I must dissent. As recognized by the majority, a nonparent relative is not entitled to any more preference for custody than a nonrelative. *In re Patterson*, 1st

14

Dist. Hamilton No. C-090311, 2010-Ohio-766, at ¶ 16. E.B. has lived her entire life with her foster parents who want to adopt her. She has a loving, established relationship with them. On the other hand, she has virtually no relationship with her second cousin, once removed. In addition, while he has not been convicted of any crimes recently, the cousin's husband, to whom the cousin has only been married since April of 2017, has a troubling criminal history, including convictions for domestic violence.

{¶31} Applying the factors of R.C. 2151.414(D), I would find that the trial court abused its discretion in denying GAL's request that permanent custody be awarded to HCJFS, and in awarding custody to the second cousin, once removed. E.B. is entitled to permanency. And I would find her best interest to be placement with HCJFS for adoption by her foster family.

Please note:

The court has recorded its own entry this date.