[Cite as *In re F.B.D.*, 2019-Ohio-2562.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


IN RE:  F.B.D.

:          APPEAL NO. C-180356
           TRIAL NO. F-05-1955X

:          *O P I N I O N.*


Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 26, 2019



*Victor Dwayne Sims*, for Appellant Father,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Jonathan Halvonik*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Jeffrey J. Cutcher*, for Appellee Mother.

**MYERS, Judge.**

{¶1}    Father has appealed from the trial court's entry granting legal custody of his daughter F.B.D. to mother.  Because the trial court did not abuse its discretion in determining that a grant of legal custody to mother was in F.B.D.'s best interest, we affirm its judgment.

*Factual Background*

{¶2}    In June of 2014, the Hamilton County Department of Job and Family Services ("HCJFS") filed a complaint for temporary custody of F.B.D., as well as five of F.B.D.'s half-siblings, alleging that they were neglected, abused, and dependent. The children had been living with mother and mother's boyfriend J.C., who was the father of several of F.B.D.'s half-siblings.  HCJFS alleged that the children had witnessed domestic violence between mother and J.C. and that the children's home was infested with snakes, mice, and bed bugs.  The allegation of abuse was dismissed, but the children were adjudicated dependent and neglected, and in October of 2014, HCJFS was granted temporary custody of F.B.D. and her half-siblings.  The entry granting temporary custody noted that the parties had no concerns involving F.B.D's father, and that they were working on establishing a better relationship between father and F.B.D. so that F.B.D. could be placed in his legal custody.

{¶3}    Father and F.B.D. continued to have regular visitation, and in February of 2016, upon father's petition for custody and HCJFS's motion to terminate temporary custody of F.B.D. and award legal custody to father, legal custody of F.B.D. was granted to father.

{¶4}    Several months later, in July of 2016, the temporary custody of four of F.B.D.'s half-siblings was terminated, and their custody was remanded to mother.

The magistrate's entry awarding custody to mother noted that mother and J.C. had made great strides in the case, and that there were no identified concerns with the stability and safety of the children when in the home of mother and J.C.

{¶5} In December of 2016, F.B.D. was placed in mother's home on a safety plan after father left her in the care of a friend while he went to work on a fishing boat in Alaska and F.B.D. reported that the caregiver whom she had been left with hit her. HCJFS filed an amended complaint alleging that F.B.D. was neglected and dependent, and in February of 2017, interim custody of F.B.D. was granted to mother.

{¶6} In September of 2017, F.B.D. was adjudicated dependent. A dispositional hearing to determine custody of F.B.D began in November of 2017 and was continued in progress until January of 2018. Both HCJFS and F.B.D.'s guardian ad litem supported an award of legal custody to mother.

{¶7} HCJFS caseworker Marian Stark-Davis testified that F.B.D. desired to live with mother but to continue visits with father, whom she had stayed with and visited at times since being returned to mother's care. Stark-Davis had concerns that father continued to place F.B.D. with the caregiver whom F.B.D. alleged had hit her, as F.B.D. expressed that she was not comfortable in that caregiver's home. Stark-Davis explained that father had difficulty setting limits with F.B.D., and she described F.B.D. as being manipulative towards father, whereas she felt that mother tried to limit that type of behavior from F.B.D. She testified that F.B.D. was doing well in general since being placed with mother. F.B.D. had poor hygiene and was failing classes while living with father. But since returning to mother's home, her attendance and grades had improved and she was admitted to Walnut Hills. Stark-Davis felt that mother's parenting had improved following her participation in services, and that mother was able to provide for all of F.B.D.'s basic needs. Stark-Davis conceded that she had thoroughly investigated father's home before he was initially awarded custody of F.B.D., but explained that despite her prior approval of

father, she had concerns that he would leave again for months at a time and place F.B.D. with other caregivers.

{¶8}    Father testified that he was not aware of any court order preventing him from going to work in another state, and that he had made arrangements for F.B.D. before he left to work in Alaska.  He left her in the care of Niame Drame and provided an ATM card for use on behalf of F.B.D.  Father felt that he was in a better position than mother to give F.B.D. a good education, and he wanted to be able to teach F.B.D. in matters of culture, religion, and socialization.  Drame testified that she had cared for F.B.D. while father was in Alaska, and that father had made arrangements to meet F.B.D.'s needs while he was gone, including providing transportation for F.B.D. to visit with mother.  She denied hitting F.B.D.

{¶9}    Following the dispositional hearing, the magistrate issued a decision granting legal custody of F.B.D. to mother.   The trial court overruled father's objections to the magistrate's decision, accepted and approved that decision as its own, and entered judgment granting legal custody of F.B.D. to mother.

{¶10}    Father has appealed, raising two assignments of error for our review. His first assignment of error contends that "the court erred when it abused its discretion in a dependency and neglect proceeding when it failed to require the agency to provide a reunification plan for the custodial parent."   His second assignment of error asserts that "the court erred in removing the child from the custody of her father where there was no sufficient evidence to show it legally permissible to do so."  Although the first assignment of error references the failure to provide a reunification plan, father provides no argument or legal citation in support of that contention.  Rather, in both of his assignments of error, he challenges the court's award of custody to mother.  We accordingly address the assignments of error together as a challenge to the trial court's grant of legal custody to mother.

### *Best-Interest Analysis*

{¶11}   Pursuant to former R.C. 2151.353(A),[1] the trial court may choose from several dispositional alternatives after a child is adjudicated abused, neglected, or dependent, including an award of legal custody to either parent.   *See* former R.C. 2151.353(A)(3).   When determining whom to award legal custody, the juvenile court should base its determination on the best interest of the child.   *In re G/D Children*, 1st Dist. Hamilton Nos. C-180170 and C-180179, 2018-Ohio-3280, ¶ 25.   We review a trial court's grant of legal custody for an abuse of discretion.   *Id.*   In this context, the trial court abuses its discretion when its best-interest determination is not supported by competent and credible evidence.   *In re M., R., and H. Children*, 1st Dist. Hamilton No. C-170008, 2017-Ohio-1431, ¶ 30.

{¶12}   The statutory scheme provides no specific set of criteria or factors for the court to consider when determining the best interest of the child in a legal-custody proceeding.   *In re A.W. and T.W.*, 1st Dist. Hamilton No. C-140142, 2015-Ohio-489, ¶ 8.   In several cases, this court has held that the best-interest factors set forth in R.C. 2151.414(D) are instructive.   *Id.*; *In re G/D Children* at ¶ 25; *In re A.C.*, 1st Dist. Hamilton No. C-140273, 2015-Ohio-153, ¶ 6.   We have also held that the court may consider the factors in R.C. 3109.04(F), a statute generally applicable to custody matters in domestic relations courts.   *In re M., R., and H. Children* at ¶ 31; *In re D.M.*, 1st Dist. Hamilton No. C-140648, 2015-Ohio-3853, ¶ 12.

{¶13}   In determining that a grant of legal custody to mother was in F.B.D.'s best interest, the trial court found that F.B.D. feels safe in mother's home and enjoys living with her siblings, and that while F.B.D. does not feel unsafe with father, she does feel unsafe in the home of caregiver Drame.   It further found that father's job historically has taken him away from home for months at a time, that mother was

---

[1] We apply the version of the statute in effect on February 8, 2017, the date that HCJFS filed the complaint for custody of F.B.D.   *See In re C.M.*, 1st Dist. Hamilton Nos. C-150365 and C-150396, 2015-Ohio-3971, ¶ 13.

present, appropriate, and available to care for F.B.D., and that no issues had arisen requiring F.B.D.'s removal from mother's home since she had returned to mother's care.

{¶14} The trial court's best-interest determination was supported by competent and credible evidence. F.B.D. expressed her desire to continue living with mother while maintaining visits with father. And despite F.B.D.'s discomfort when placed with Drame, father continued to use Drame as a caregiver. The HCJFS caseworker's testimony established that F.B.D.'s schoolwork improved when she was in mother's care, and that mother was better able than father to set limits for F.B.D. and prevent F.B.D. from engaging in manipulative behavior. While father obviously loves F.B.D. and appears able to provide for her, we cannot find that the trial court abused its discretion in determining that a grant of legal custody to mother was in F.B.D.'s best interest.

{¶15} Father's first and second assignments of error are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

ZAYAS, P.J., and WINKLER, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.