[Cite as *In re H & J Children*, 2020-Ohio-3444.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


IN RE: H & J CHILDREN         :         APPEAL NO. C-200115
                                     TRIAL NO. F17-1685X

                                  :         *O P I N I O N.*


Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: June 24, 2020


*Christopher P. Kapsal,* for Appellant Grandmother,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Gretta Herberth*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Klarysa Benge*, Assistant Public Defender, for Appellee Guardian ad Litem.

**MYERS, Judge.**

{¶1}    Paternal grandmother ("grandmother") appeals from the trial court's entry denying her motion for legal custody of her four grandchildren and granting permanent custody of the children to the Hamilton County Department of Job and Family Services ("HCJFS").  Because the trial court did not err in determining that a grant of permanent custody was in the children's best interest, we affirm its judgment.

*Factual and Procedural Background*

{¶2}    HCJFS filed a complaint for temporary custody of B.H., D.J., and N.J. in July 2017, asserting that they were neglected, dependent, and abused.[1]   The complaint alleged that D.J., then two years old, was found wandering on a street alone, and that N.J., who was then one year old, was found home alone with a six-year-old sibling and seven-year-old cousin.  All three children were adjudicated dependent, D.J. and N.J. were additionally adjudicated abused and neglected, and the children were placed in the temporary custody of HCJFS.

{¶3}    HCJFS filed a case plan for the family.  It required that mother engage in a diagnostic assessment and follow all resulting recommendations, engage in random toxicology screens, engage in parenting education, and maintain stable housing and income.  The case plan further indicated that the alleged father of the children, T.H., had been physically abusive towards mother, and it recommended that he undergo DNA testing to establish paternity, complete a diagnostic assessment and follow all resulting recommendations, engage in parenting classes, and obtain and maintain stable housing and income.

---

[1] The complaint also sought custody of another sibling, T.H., who is not involved in this appeal.

{¶4} In October 2017, mother gave birth to T.J. T.J. was adjudicated dependent and temporary custody of him was awarded to HCJFS.

{¶5} In May 2018, HCJFS filed a motion to modify temporary custody to permanent custody. The motion alleged that the children could not or should not be placed with either parent within a reasonable time, and that a grant of permanent custody was in the children's best interest. Grandmother, who lived in Illinois, filed a motion for legal custody of the children, and counsel was appointed to represent her in the proceedings.

{¶6} A two-day hearing was conducted before a magistrate on the competing motions for permanent custody and legal custody. Prior to the hearing, the children's guardian ad litem filed a report indicating that the children were too young to express their own wishes regarding placement and advocating for a grant of permanent custody.

{¶7} Brittanie Dudley, who was the HCJFS caseworker for the children from approximately December 2017 until April 2019, testified regarding mother's and father's compliance with the case plan. Mother completed a diagnostic assessment, but she did not show up for toxicology screens or attend parenting classes. Mother's visitation with the children was very sporadic, and she was eventually removed from the visitation schedule due to lack of attendance, despite HCJFS furnishing her with bus tickets to eliminate transportation issues. Mother resumed visitation once a new referral was issued, but she never progressed past the facilitated level of visitation. The few visits that Dudley observed were chaotic. She testified that mother engaged the children by bringing food and playing games, but that mother was overwhelmed and seemed unable to handle all the children. B.H. was the only child that truly engaged with mother during visitation. Dudley testified that mother had obtained stable housing, but not stable employment, and she was concerned that mother would be unable to provide for the children's basic needs.

{¶8} Father established paternity for all four children, but did not complete a diagnostic assessment and did not visit with the children a single time while Dudley had case responsibility.

{¶9} Dudley also testified regarding the children's medical needs and their current placements. She explained that B.H. was a toe walker, and that for a period of time she required physical therapy and braces to help her walk flat on her feet. She described D.J. as very defiant and stated that he struggled with adjustment. T.J. needed surgery for an umbilical hernia, but was otherwise healthy, and the agency noted no medical concerns with N.J. Dudley testified that D.J. was extremely bonded with his foster family, and that his foster parents have been very involved in the therapy he receives to address his issues with aggression. T.J. and N.J. are placed in the same foster home and are extremely bonded with their foster mother. Dudley explained that this was especially true for T.J., as the foster mother is the only caregiver he has known. B.H. had initially been placed with T.J. and N.J., but due to her defiant behavior, she was moved to a different foster home, where she is doing well. All foster parents are interested in adopting the children should permanent custody be granted to HCJFS.

{¶10} Dudley did not believe that grandmother was a suitable option for custody. She testified that a 2017 Interstate Compact on the Placement of Children ("ICPC") home study conducted on grandmother was not approved because, at that time, father was living with grandmother and he had a criminal history. A subsequent ICPC home study was conducted and a report was issued in September 2018. HCJFS had multiple concerns with grandmother's home, including that her boyfriend had a criminal history, she did not drive, which presented transportation issues, and she had only visited with the children once during their time in the custody of HCJFS and was not bonded with them.

{¶11} Dudley acknowledged that the second ICPC home study recommended grandmother as a placement resource for the children. She interpreted that recommendation as allowing grandmother to continue with the process to become a licensed foster parent, but believed that the home study could not be approved until a license was obtained. Dudley further acknowledged that the second home study recommended preplacement visitation between the children and grandmother, giving grandmother access to the children's medical and dental records, and including grandmother in D.J.'s therapy. HCJFS did not follow through with these recommendations. Dudley disputed an assertion that grandmother had visited with the children three times. She testified that grandmother had once asked for a visit to be scheduled, but that the request was too "last minute" so the agency was unable to set up the visit.

{¶12} Grandmother addressed HCJFS's concerns in her own testimony. She contended that she had visited with the children three times while they were in the custody of HCJFS, and that the last visit was approximately one year ago. She had requested more visits, but was initially told that she did not have rights to do so. Grandmother explained that she previously kept the children at her home in Chicago for long periods of time before HCJFS's involvement, and that, with the exception of T.J. who not born at the time, she was bonded with them. Grandmother testified that she lived in a seven-bedroom home with several other family members and that she had plenty of room for her grandchildren. Although she does not drive, she lives near several schools and would use public transportation with the children. Grandmother explained that her boyfriend does not, and will not, live in her home. At the time of testifying, grandmother had finished her foster-care classes and was waiting on her license. Grandmother described her relationship with her son, the children's father, as "rocky."

{¶13} The only other witness to testify was D.J.'s foster mother J.E., who testified that D.J.'s behavior had greatly improved in the almost two years that he had been in her care. J.E. testified that D.J. was very much a part of her family and that she desired to adopt him.

{¶14} The magistrate issued a decision denying grandmother's petition for legal custody and granting permanent custody of the children to HCJFS. Both mother and grandmother filed objections to the magistrate's decision. Grandmother argued that the decision was against the manifest weight of the evidence, and that, subsequent to the decision being issued, she received her Illinois foster-parent license. Grandmother also filed a motion to present additional evidence, specifically that she had been approved to be a foster-care provider in Illinois and that her ICPC home study had been approved.

{¶15} The trial court issued an entry stating that the parties had stipulated to a supplement to grandmother's ICPC home study being admitted into evidence. The entry further granted grandmother's motion to present additional evidence, set aside the magistrate's decision, and remanded the case to the magistrate for consideration of the new evidence.

{¶16} After reviewing the additional evidence, the magistrate issued a decision that adopted and incorporated its earlier decision denying grandmother's motion for legal custody and granting HCJFS's motion for permanent custody. The decision noted that the additional evidence established that the state of Illinois would allow placement with grandmother, but that the magistrate did not find grandmother to be credible and did not approve her home for placement.

{¶17} Grandmother again filed objections to the magistrate's decision, contending that the magistrate had not adequately weighed her home study and that the decision was against the manifest weight of the evidence.

6

{¶18} The trial court overruled grandmother's objections. It issued an entry accepting and approving the magistrate's decision and awarding permanent custody of the children to HCJFS based on its determination that the children could not or should not be placed with either parent within a reasonable time and that a grant of permanent custody was in the children's best interest.

{¶19} Grandmother appeals, raising two assignments of error for our review.

### *The Children's Wishes*

{¶20} In her first assignment of error, grandmother argues that the trial court erred in failing to consider the wishes of the children, particularly the oldest child B.H., when granting permanent custody and when determining whether the children were entitled to independent counsel.

{¶21} Pursuant to R.C. 2151.414(D)(1)(b), the wishes of the child is one factor that the trial court must consider when making a best-interest determination. Here, the magistrate found that the children were too young to express their own wishes, but that their guardian ad litem had advocated on their behalf for a grant of permanent custody. The trial court made the same finding.

{¶22} Grandmother did not challenge the magistrate's failure to consider the children's wishes in her objections to the magistrate's decision, and has therefore waived all but plain error. Juv.R. 40(D)(3); *In re H.R.H.*, 1st Dist. Hamilton No. C-200071, 2020-Ohio-3160, ¶ 7. Plain error is present where, but for the error, the outcome of the proceedings would have been different. *State v. See*, 1st Dist. Hamilton Nos. C-190251 and C-190252, 2020-Ohio-2923, ¶ 40.

{¶23} In support of her argument that the trial court erred in failing to consider the children's wishes, grandmother directs this court to several cases in which the wishes of children of a similar age to B.H., who was approximately six

years old at the time of the permanent-custody hearing, were considered. This argument is not persuasive, and we decline to make a bright line rule that every six-year-old child is mature enough to express her or his custodial wishes. The record in this case contains no evidence contradicting the trial court's finding that the children were too young to express their own wishes or indicating that B.H. desired to be returned to a parent's care or to be placed with grandmother. And because the children were not able to express their own wishes, the trial court considered the opinion of their guardian ad litem, who advocated on behalf of the children that a grant of permanent custody was in their best interest. *See* R.C. 2151.414(D)(1)(b) (in determining the best interest of a child, the court shall consider the wishes of the child expressed directly by the child or through the child's guardian ad litem). Contrary to grandmother's assertion, the trial court did not fail to consider the wishes of the children when granting permanent custody.

{¶24} We likewise find no merit to grandmother's assertion that the trial court failed to consider the wishes of the children when determining whether to appoint independent counsel. In certain circumstances, a child that is the subject of proceedings to have her or his parents' parental rights terminated is entitled to independent counsel. *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, syllabus; *In re D.D.*, 1st Dist. Hamilton No. C-190387, 2019-Ohio-4492, ¶ 10. Those circumstances are where the child's custodial wishes are contrary to the guardian ad litem's recommendation. *In re A.J.O. and M.N.O.*, 1st Dist. Hamilton No. C-180680, 2019-Ohio-975, ¶ 28. Here, the record contains no evidence that the wishes of any of the children conflicted with those of the guardian ad litem. Consequently, the trial court did not err in failing to appoint independent counsel for the children.

{¶25} Grandmother's first assignment of error is overruled.

***Best-Interest Determination***

{¶26} In her second assignment of error, grandmother argues that the trial court erred and abused its discretion when it denied her custody petition and granted permanent custody of the children to HCJFS. She contends that the trial court's decision was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶27} We employ different standards of review when considering a trial court's ruling on a motion for permanent custody and a motion for legal custody. Before granting a motion for permanent custody, a trial court must find that a grant of permanent custody is in the children's best interest, and that one of the conditions in R.C. 2151.414(B)(1) applies. *In re H.R.H.*, 1st Dist. Hamilton No. C-200071, 2020-Ohio-3160, at ¶ 16. Here, the trial court found that, pursuant to R.C. 2151.414(B)(1)(a), the children could not or should not be placed with either parent within a reasonable time. Grandmother does not dispute this finding.

{¶28} The trial court's grant of permanent custody must be supported by clear and convincing evidence. *Id.* at ¶ 15. Clear and convincing evidence "is evidence sufficient to 'produce in the mind of the trier of fact[ ] a firm belief or conviction as to the facts sought to be established.' " *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46, quoting *In re K.H.,* 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42. An examination into the sufficiency of the evidence requires this court to determine whether the juvenile court had sufficient evidence before it to satisfy the clear-and-convincing standard. *In re R.M.S.*, 1st Dist. Hamilton Nos. C-190378, C-190386 and C-190405, 2019-Ohio-4281, ¶ 27. When reviewing a challenge to the manifest weight of the evidence, we must review the record to determine whether the trial court lost its way and

committed such a manifest miscarriage of justice that its judgment must be reversed. *Id.*

{¶29} When considering a motion for legal custody, the best interest of the child is the trial court's primary consideration. *In re F.B.D.*, 1st Dist. Hamilton No. C-180356, 2019-Ohio-2562, ¶ 11. We review a trial court's ruling on a motion for legal custody for an abuse of discretion. *Id.* In this context, an abuse of discretion occurs where the trial court's best-interest determination is not supported by competent and credible evidence. *Id.*

{¶30} Here, grandmother raises no challenge to the trial court's finding that the children could not or should be placed with either parent within a reasonable time. She only challenges the trial court's determination that a grant of permanent custody, and not a grant of legal custody to her, was in the children's best interest.

{¶31} In determining whether permanent custody is in a child's best interest, the juvenile court must consider all relevant factors, including: (a) the child's interaction with parents, siblings, relatives, foster caregivers and out-0f-home providers, and any other person who may significantly affect the child; (b) the child's wishes; (c) the custodial history of the child; (d) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors under R.C. 2151.414(E)(7) to (E)(11) apply. *See* R.C. 2151.414(D)(1)(a)-(e).

{¶32} The trial court made findings under each of these factors. As to the children's interaction with parents, siblings, relatives, and foster caregivers, the court found that the children had been out of their parents' care for over two years; that none of the children had a significant relationship with grandmother, who had only visited with them once in the past year; that grandmother was not credible and had exaggerated her relationship with the children; and that the children had positive relationships with their foster care providers.

{¶33} The court found that the children were too young to express their own wishes, but noted that their guardian ad litem advocated for a grant of permanent custody. With respect to their custodial history, the court found that the three oldest children had been in nonfamily homes for over two years, and that T.J. was essentially born into foster care and had never known the family home. The court further found that a legally secure placement for the children could only be achieved with a grant of permanent custody to HCJFS, and that none of the factors in R.C. 2151.414(E)(7) to (11) were applicable to either parent.

{¶34} The trial court's best-interest findings were supported by clear and convincing evidence. And this was not the rare case in which the trier of fact lost its way and committed such a manifest miscarriage of justice that its judgment must be reversed. The trial court was in the best position to judge the credibility of the witnesses. It was entitled to find grandmother lacking in credibility and to find that she had exaggerated her bond with the children. *In re W Children*, 1st Dist. Hamilton No. C-180620, 2019-Ohio-690, ¶ 49.

{¶35} We hold that the trial court did not err in determining that a grant of permanent custody to HCJFS, rather than a grant of legal custody to grandmother, was in the children's best interest. The award of permanent custody was supported by both the sufficiency and the weight of the evidence. The second assignment of error is overruled.

{¶36} The judgment of the trial court granting permanent custody of the children to HCJFS is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.