[Cite as *In re D.Z.F.*, 2020-Ohio-5246.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: D.Z.F.                 :          APPEAL NO. C-200260
                                        TRIAL NO. F11-1414 X

                              :          *O P I N I O N.*

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  November 10, 2020

*Jon R. Sinclair,* for Appellant Mother,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alyssa M. Miller*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*ProKids, Inc.*, and *Paul Hunt*, Guardian ad Litem for D.F. and K.F.

**CROUSE, Judge.**

{¶1}   Mother appeals from the judgment of the Hamilton County Juvenile Court granting permanent custody of one of her children, D.F., to the Hamilton County Department of Job and Family Services ("HCJFS"), and awarding legal custody of one of her children, K.F., to J.M.   The juvenile court ordered the termination of mother's parental rights as to D.F. and custodial rights as to K.F. based on a chronic history of employment and housing problems.   Because the juvenile court did not err in determining the best interest of the children, we affirm its judgment.

### I.  Facts and Procedure

{¶2}   Mother initially came before the juvenile court in 2017 due to reports of physical abuse.  On August 24, 2017, HCJFS received a report of physical abuse committed by mother against one of her children, K.C.  Mother had been arrested for domestic violence and assault, and detained in the Hamilton County Justice Center.  HCJFS subsequently placed six of mother's children on an out-of-home safety plan with a relative.  On August 31, 2017, mother was convicted of domestic violence and released from the Justice Center.

{¶3}   On September 22, 2017, HCJFS received another report of physical abuse committed by mother.  Mother had picked up her children to take them to school.  During the drive, mother and two of her children began physically fighting K.C.  K.C. jumped out of the car and ran to his paternal grandmother's house.  K.C. reported that mother started the fight because "he put her in jail."  HCJFS requested an ex parte emergency grant of interim custody of mother's children, which the juvenile court granted via telephone emergency order.

{¶4}   On September 25, 2017, HCJFS filed for temporary custody based in part on the reports of physical abuse, and in part on general concerns of inadequate parental care.   HCJFS also alleged that the children were abused, neglected, and dependent.   The magistrate granted temporary custody of the children to HCJFS. D.F. was placed in a foster home and K.F. was placed with his then-alleged father, J.M.  The juvenile court later adjudicated the children neglected and dependent.

{¶5}   HCJFS established a case plan to reunify D.F. and K.F. with mother. The case plan required mother to complete parenting classes, attend individual therapy, regularly visit her children, participate in random drug screens, and maintain stable housing and income.   Mother successfully completed parenting classes and initiated individual therapy on her own volition.   However, mother struggled to meet the other goals.   Mother cancelled several visits and self-reported the use of marijuana.  In addition, mother could not maintain stable employment or housing.  Mother testified that she intermittently held employment as a home health aide.  However, employment could not be verified by HCJFS.  Mother also testified that she was twice evicted and could not afford independent housing.  Throughout the pendency of the case, mother resided temporarily with various family members.

{¶6}   On August 9, 2019, HCJFS filed a motion to modify temporary custody of D.F. to permanent custody.   Six days later, it filed a motion to terminate temporary custody of K.F. and award legal custody to J.M.  Although genetic testing had excluded him as the biological father, J.M. nonetheless petitioned for legal custody of K.F.

{¶7}   A three-day hearing was conducted before the magistrate on the simultaneous motions for permanent custody and legal custody.   Based on the evidence presented, the magistrate granted permanent custody of D.F. to HCJFS and

3

legal custody of K.F. to J.M. Following mother's timely objections, the juvenile court adopted the magistrate's decision.

{¶8} Mother now appeals the juvenile court's decision and raises one assignment of error, challenging the court's best-interest findings.

## II. Permanent Custody of D.F.

{¶9} First, mother argues that the juvenile court erred by granting permanent custody of D.F. to HCJFS. Although the juvenile court made the appropriate findings, mother contends that these findings were based upon insufficient evidence or against the manifest weight of the evidence.

{¶10} A juvenile court's determination on a motion for permanent custody must be supported by clear and convincing evidence. *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46. In reviewing a sufficiency challenge, we must determine if the juvenile court had sufficient evidence before it to satisfy each element. *In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 15. In reviewing a manifest-weight challenge, we must examine the record and determine whether the evidence on each element satisfies the clear-and-convincing standard. *Id.*

{¶11} Under R.C. 2151.414(B), the juvenile court may grant a motion for permanent custody if it finds that one of the five conditions set forth in R.C. 2151.414(B)(1) applies and that permanent custody is in the best interest of the child.

{¶12} Here, mother raises no challenge to the juvenile court's 12-of-22 finding under R.C. 2151.414(B)(1)(d). She challenges only the juvenile court's determination that a grant of permanent custody was in D.F.'s best interest.

{¶13} In determining the best interest of the child, the juvenile court must consider all relevant factors, including, but not limited to: (a) "[t]he interaction and

4

interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers"; (b) "[t]he wishes of the child"; (c) "[t]he custodial history of the child"; (d) "[t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency"; and (e) "[w]hether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1).

{¶14} In this case, the juvenile court walked through each of the R.C. 2151.414(D)(1) factors and documented sufficient evidence that granting permanent custody to HCJFS was in D.F.'s best interest. With respect to the child's interaction and interrelationship with others (R.C. 2151.414(D)(1)(a)), the court found that mother did not maintain consistent and positive visitation with D.F. The testimony demonstrated that D.F. acted out in mother's presence and eventually refused to attend visitation. The court noted that mother "seemed to be a trigger for [D.F.'s] explosive behaviors." The court further found that D.F. was bonded with his foster mother. The testimony showed that D.F.'s foster mother was able to redirect and deescalate his explosive behaviors.

{¶15} With respect to the wishes of the child (R.C. 2151.414(D)(1)(b)), the court found that D.F. wished to return to mother. However, the court also noted that the guardian ad litem supported an award of permanent custody to HCJFS.

{¶16} With respect to the custodial history of the child (R.C. 2151.414(D)(1)(c)), the court determined that D.F. had been in HCJFS placement for 24 months.

{¶17} With respect to the child's need for legally secure placement (R.C. 2151.414(D)(1)(d)), the court found that mother showed no significant progress to

5

remedy the conditions that resulted in the removal of D.F. The court determined that mother could not provide an appropriate placement because she failed to obtain stable housing and income. The testimony also showed that mother did not have reliable transportation or child care. The court further found that the alleged father had abandoned D.F. The record shows that no alternative placements availed themselves to take custody of D.F.

{¶18} Under these circumstances, clear-and-convincing evidence supports the juvenile court's determination that a grant of permanent custody was in D.F.'s best interest. The award of permanent custody was supported by both the sufficiency and the weight of the evidence.

### III. Legal Custody of K.F.

{¶19} Second, mother argues that the juvenile court erred by granting legal custody of K.F. to J.M. Mother again contends that the juvenile court's findings were based upon insufficient evidence or against the manifest weight of the evidence.

{¶20} In reviewing a juvenile court's grant of legal custody, we apply an abuse-of-discretion standard and determine whether the court's best-interest determination is supported by competent and credible evidence. *In re E.B.*, 1st Dist. Hamilton No. C-190050, 2019-Ohio-3943, ¶ 13; *In re F.B.D.*, 1st Dist. Hamilton No. C-180356, 2019-Ohio-2562, ¶ 11.

{¶21} If a child is adjudicated abused, neglected, or dependent, the juvenile court may choose from a number of dispositional alternatives. *See* R.C. 2151.353(A). As relevant to this appeal, the juvenile court may choose to commit the child to the temporary custody of a children-services agency, or award legal custody to a parent or any person who requests legal custody of the child. R.C. 2151.353(A)(2) and (A)(3). In doing so, the juvenile court is guided by the best interest of the child and

6

should apply the factors set forth in R.C. 2151.414(D). *See In re A.W.*, 1st Dist. Hamilton No. C-140142, 2015-Ohio-489, ¶ 8; *In re Z.,* 1st Dist. Hamilton No. C-190026, 2019-Ohio-1617, ¶ 29; *In re E.R.M.*, 1st Dist. Hamilton No. C-190391, 2020-Ohio-2806, ¶ 16.

{¶22} With respect to the child's interaction and interrelationship with others (R.C. 2151.414(D)(1)(a)), the court found that K.F. regards J.M. as his father. The court further found that K.F. was bonded to J.M. and the other members of the household. J.M. transported K.F. to and from school every day, took him to after-school activities, and attended school assemblies. The testimony showed that K.F. was bonded with mother and his siblings. However, the court noted that mother did not regularly call K.F. and displayed minimal involvement in his education.

{¶23} The court made no findings with respect to the wishes of the child (R.C. 2151.414(D)(1)(b)). However, the testimony showed that K.F. wished to remain with J.M.

{¶24} With respect to the custodial history of the child (R.C. 2151.414(D)(1)(c)), the court found that K.F. had been in the custody of J.M. since October 2017.

{¶25} With respect to the child's need for legally secure placement (R.C. 2151.414(D)(1)(d)), the juvenile court found that mother was unable to provide a safe, stable home for her children. On the other hand, the court found that J.M. consistently demonstrated income sufficient for the care of K.F. In addition, HCJFS approved J.M.'s home study and had no concerns about his ability to provide a permanent home for K.F. J.M. was also willing to facilitate visits between K.F. and mother.

{¶26} Under these circumstances, the juvenile court did not err in determining that a grant of legal custody to J.M. was in K.F.'s best interest. The award of legal custody was supported by both the sufficiency and the weight of the evidence.

### IV. Conclusion

{¶27} For the foregoing reasons, mother's sole assignment of error is overruled and the judgment of the juvenile court is affirmed.

Judgment affirmed.

**MOCK, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.