[Cite as *In re J.M.C.*, 2023-Ohio-3643.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: J.M.C. AND D.D.        :        APPEAL NO.  C-230007
                                      TRIAL NO.  F20-264X

                                                 :

                                                 :            *O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 6, 2023

*Christopher Bazeley*, for Appellant Mother,

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Michelle Browning*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Pamela Miller*, pro se,

*Kacy C. Eaves*, Guardian ad Litem for the children.

**WINKLER, Presiding Judge.**

{¶1}   In this legal-custody appeal, the juvenile court granted legal custody of two of mother's children to Pamela Miller, a family friend of mother, after a period of temporary custody with the Hamilton County Department of Job and Family Services ("HCJFS").  Mother now appeals, challenging the grant of legal custody to Miller and the denial of a remand of custody to mother.   For the following reasons, we affirm the juvenile court's judgment.

### Facts and Procedural History

{¶2}   This case began on September 22, 2019, when HCJFS received a report of concern for mother's two children, J.M.C. and D.D.  At the time, J.M.C. and D.D. resided with their maternal grandmother and maternal aunt due to previous domestic violence between mother and her paramour.  On September 22, 2019, mother and her paramour arrived to pick up J.M.C. and D.D.  Mother and the children's maternal aunt engaged in an altercation.   Mother and her paramour left with the children and the altercation was reported to HCJFS and the police.

{¶3}   In response, HCJFS initiated a safety plan for J.M.C. and D.D. and placed the two with Pamela Miller, a family friend of mother who had cared for the children under a previous safety placement.  Over several months of proceedings, the juvenile court adjudicated J.M.C. and D.D. dependent and granted HCJFS temporary custody of the two children, who stayed in Miller's care throughout the proceedings.

{¶4}   Over the next two years, mother participated in case-plan services. Mother completed an eight-week domestic-violence course because of the earlier incident with the children's maternal aunt and a dismissed charge of domestic violence against her paramour.  Mother broke off her romantic relationship with her paramour

in July 2021, but only after another domestic-violence incident. This occurred after mother had completed the domestic-violence course. The two are still coparenting mother's third child who was born during their relationship.

{¶5} Mother was referred for counseling and mental-health services after she was diagnosed with bipolar disorder and posttraumatic stress disorder. Mother was also diagnosed with anger-management issues and depression. Mother was to attend therapy monthly, but the evidence differed about mother's attendance.

{¶6} After securing stable employment and housing, mother had several supervised visits with J.M.C. and D.D. Mother completed an eight-week parenting-enrichment course. During later supervised visits, the HCJFS caseworker approved of mother's parenting and disciplining of the children.

{¶7} While mother participated in case-plan services, J.M.C. and D.D. resided with Miller and were enrolled in school, extracurricular activities, and athletics, including taekwondo, football, basketball, and baseball. J.M.C. was enrolled in an individualized education plan and speech therapy. Miller took J.M.C. to his speech-therapy appointments and ensured J.M.C. kept up with the recommended exercises. Mother has attended few meetings with school staff and attended only two of the children's medical appointments.

{¶8} The temporary-custody period ended after two years. Miller and the guardian ad litem both petitioned to grant Miller legal custody of J.M.C. and D.D. In response to Miller's petition, mother blocked all contact with Miller. HCJFS petitioned to remand custody to mother with an order of protective supervision. At trial, the magistrate decided to grant legal custody to Miller. The juvenile court

overruled mother's objections and adopted the magistrate's decision. Mother now timely appeals.

## Law and Analysis

{¶9} Mother raises two assignments of error for review. In her first assignment of error, mother argues the juvenile court's grant of legal custody to Miller was not supported by a preponderance of the evidence. In her second assignment of error, mother argues the juvenile court erred by denying HCJFS's motion to remand custody to mother. Because both assignments of error argue the juvenile court erred in its custody determination, we address them together.

{¶10} A juvenile court's grant of legal custody is reviewed for an abuse of discretion. *In re D.Z.F.*, 1st Dist. Hamilton No. C-200260, 2020-Ohio-5246, ¶ 20, citing *In re E.B.*, 1st Dist. Hamilton No. C-190050, 2019-Ohio-3943, ¶ 13, and *In re F.B.D.*, 1st Dist. Hamilton No. C-180356, 2019-Ohio-2562, ¶ 11. In deciding legal custody, a juvenile court abuses its discretion when its determination of the best interests of the children is not supported by competent and credible evidence. *Id.*

{¶11} If a child is adjudicated abused, neglected, or dependent, the juvenile court may choose from several dispositional alternatives. *See* R.C. 2151.353(A). When deciding from among these options, the "juvenile court should base its determination on the best interest of the child." *In re F.B.D.* at ¶ 11. In making that determination, the juvenile court may turn to the best-interest factors in R.C. 3109.04(F)(1) and 2151.414(D) for guidance. *Id.* at ¶ 12. As these factors are instructive and not mandatory, the juvenile court does not have to make specific findings on each factor. *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 31.

{¶12}    Here, the juvenile court's best-interest determination was supported by credible and competent evidence.  While the juvenile court did not list expressly the factors listed in R.C. 3109.04(F)(1) and 2151.414(D)(1), the juvenile court's best-interest analysis considered several statutory factors: (1) the children's relationship with parents, relatives, caregivers, and others; (2) the wishes of the children and the parents regarding the children's care; (3) the children's custodial history; (4) the children's need for a secure placement; (5) the children's adjustment to their home, school, and community; and (6) the mental and physical health of all persons involved.

{¶13}    First, with respect to the children's relationship with parents, relatives, caregivers, and others, the children have a relationship with both mother and Miller. Mother had regular supervised, in-home visitation with J.M.C. and D.D.  Both children are bonded with mother and mother's third child.  Mother parents the children appropriately during visits, though mother has not yet had unsupervised visits with the children.  J.M.C. and D.D. have also bonded with Miller during her care.  Miller's adult daughter is a godparent to J.M.C. and D.D. and they have a positive relationship with her.

{¶14}    Second, with respect to the wishes of the children and the parents, the children have been ambivalent.  The children expressed different wishes at different times whether to remain with Miller or return to mother's care.  The children ask when and if they will return to mother's care, but Miller and the guardian ad litem indicate the children also desire to remain with Miller.  No in-camera interview was conducted to resolve this factor.

{¶15}    Third, with respect to the children's custodial history, the children were in HCJFS's custody and Miller's care for approximately three years by the time of trial.

5

The children first came to Miller under a safety plan in 2019 and lived with Miller throughout the course of the case.

{¶16} Fourth, with respect to the children's need for a secure placement, mother has secured stable housing and employment and cares for her third child. Miller owns her home where the children have resided throughout the proceedings. The children are familiar with both homes.

{¶17} Fifth, with respect to the children's adjustment to their home, school, and community, the children are well-adjusted to living with Miller. Miller enrolled J.M.C. and D.D. in a new school as well as extracurricular activities and athletics, including taekwondo, football, basketball, and baseball. J.M.C. is on an individualized education plan and attends regular speech-therapy appointments. Miller takes J.M.C. to his speech-therapy appointments and ensures J.M.C. keeps up with his exercises. Mother has attended few meetings with school staff and attended only two of the children's medical appointments. Arranging visits has been difficult because mother blocked contact with Miller after Miller petitioned for legal custody.

{¶18} Sixth, with respect to the mental and physical health of all persons involved, mother has been diagnosed with bipolar disorder and posttraumatic stress disorder. While mother completed case-plan services to the satisfaction of HCJFS, the juvenile court had ample evidence to doubt the lasting results of mother's behavioral changes. Mother was to regularly attend therapy as part of her case-plan services and the evidence differed on her attendance. While the HCJFS caseworker testified that mother attended all appointments, the therapist's records show mother missing nine appointments over six months. Mother never completed a psychiatric evaluation and she consistently refused medication. Additionally, part of mother's case plan was to

address her anger-management issues. Yet, the magistrate saw multiple angry outbursts from mother during Miller's testimony, one of which necessitated a brief recess. While taking a recess for mother to recompose herself may indicate mother can manage her emotions, mother's overall behavior in court reinforced the juvenile court's conclusion that remanding custody to mother was not in the children's best interest. *See In re M.E.*, 1st Dist. Hamilton No. C-200349, 2021-Ohio-450, ¶ 12 (noting mother's aggressive behavior as indicative of a lack of compliance with her case plan, which included addressing her anger-management issues).

{¶19} Outside the statutory factors, the juvenile court also had reason to doubt HCJFS's conclusion that mother had remediated domestic-violence concerns that initially caused J.M.C. and D.D. to be placed outside the home. It can be in the children's best interest to award custody to a nonparent even where the parent has completed case-plan services when concerns about the children remain. *See In re K.V.*, 6th Dist. Summit No. L-11-1087, 2012-Ohio-190, ¶ 20.

{¶20} Here, the juvenile court had reason to doubt mother had remediated the problems that saw D.D. and J.M.C. removed from her custody. Because domestic violence between mother and her paramour originally brought the case to HCJFS's attention, mother was required to complete a domestic-violence course. Mother completed the course to the satisfaction of HCJFS. However, two instances cut against that satisfactory mark. In 2020, mother posted on social media four photographs of herself at different times brandishing a handgun and captioned with menacing comments targeting her former paramour's new partner. Mother claimed the weapon was a BB gun, not a firearm, and the photographs were not intended to be menacing and she posted them because she was "bored." The magistrate construed them as

menacing. In August 2021, mother assaulted her former paramour when she came to mother's house with her new romantic partner. This second domestic-violence incident occurred after mother had completed the domestic-violence course to the satisfaction of HCJFS.

**{¶21}** Ultimately, the juvenile court's best-interest determination considered six statutory factors and was supported by competent and credible evidence. Additionally, the juvenile court had a basis to doubt that mother had remediated the problems that brought the attention of HCJFS, despite mother completing case-plan services to HCJFS's approval. Consequently, we hold that the juvenile court did not abuse its discretion in granting legal custody of J.M.C. and D.D. to Miller and denying a remand of custody to mother. Accordingly, we overrule mother's two assignments of error.

## Conclusion

**{¶22}** Having overruled mother's two assignments of error, we affirm the judgment of the juvenile court.

Judgment affirmed.

**BOCK** and **KINSLEY**, **JJ.**, concur.

Please note:
   The court has recorded its entry on the date of the release of this opinion.