[Cite as *In re A.F.*, 2020-Ohio-5069.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: A.F. | : | APPEAL NOS. C-200230 |
| | | C-200231 |
| | : | TRIAL NO. F14-1074x |
| | : | *O P I N I O N.* |

Appeals From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: October 28, 2020

*Cynthia S. Daugherty* for Appellant Mother,

*Christopher P. Kapsal* for Appellant Father,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Jennifer Weigel*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Marianne Jones Ford*, Assistant Public Defender, Guardian ad Litem for the minor children.

**MOCK, Presiding Judge.**

{¶1} Appellant mother appeals the decision of the Hamilton County Juvenile Court awarding permanent custody of two of her children, S.F. and A.F., to appellee Hamilton County Department of Job and Family Services ("HCJFS"), and awarding legal custody of one of her children, T.C., to the child's stepmother. The father of A.F. also appeals the court's decision granting permanent custody of his child to HCJFS.

### *Facts and Procedure*

{¶2} The record shows the family initially came before the juvenile court in May 2014 because of concerns of domestic violence between mother and S.F.'s father occurring in the children's presence. The court ordered that the children be placed in mother's custody under protective supervision. HCJFS withdrew its complaint after mother had moved and had assured caseworkers that she no longer had contact with S.F's father.

{¶3} On April 18, 2017, HCJFS received an allegation of physical abuse committed by S.F.'s father. Mother had called the police when S.F.'s father had assaulted her in her home while the children were present after she had asked him to leave. The police observed that she had a swollen cheek and chin, and she was taken to the hospital. S.F.'s father later admitted that he had punched mother, and he was charged with assault and domestic violence.

{¶4} On July 14, 2017, HCJFS filed a complaint and a motion for interim custody, but withdrew it three days later when it could not locate the family. Mother had disregarded the previously implemented safety plan and had disappeared with the children. HCJFS subsequently learned that mother was residing with A.F.'s

father. When caseworkers arrived at A.F.'s father's residence, mother, S.F. and A.F. were gone. T.C. was found at her maternal great-grandmother's home, where she often stayed.

{¶5} On August 2, 2017, HCJFS filed a motion for interim custody and a complaint alleging that the children were abused, neglected and dependent. The juvenile court granted interim custody of all three children to HCJFS. T.C. was placed with her maternal great-grandmother. S.C. and A.C. still had not been located. They were eventually found, and mother was charged with interference with custody, although that charge was later dismissed.

{¶6} After numerous continuances, all three children were subsequently adjudicated dependent. After mother and A.F.'s father requested bifurcation of the proceedings regarding T.C. and the other two children, the court held separate dispositional hearings.

{¶7} HCJFS was granted temporary custody of T.C. on December 19, 2017, upon the stipulation of both mother and her father. The parties further stipulated that HCJFS's plan was to work toward reunification with mother. Mother agreed that she would "continue to attend individual therapy, complete domestic violence classes, and parenting education classes." T.C's father was incarcerated on drug charges at the time. His wife, T.C.'s stepmother, had filed a petition for custody of T.C.

{¶8} The court held dispositional hearings for A.F. and S.F. on January 29, 2018. Mother and A.F.'s father stipulated to an award of temporary custody to HCJFS. The court ordered HCJFS to refer mother for domestic-violence services. A.F.'s father did not request unification services, but he did request visitation with his child. The court ordered HCJFS to arrange visitation. Prior to that time A.F.'s

father had not visited with his daughter since she was placed in the interim custody of HCJFS on August 2, 2017.

{¶9} On July 10, 2018, mother filed a motion asking the court to terminate HCJFS's temporary custody and remand custody of the children to her. She contended that she had completed the services required of her by the case plan. HCJFS filed a motion to extend temporary custody.

{¶10} The court denied mother's motion. It found that clear and convincing evidence supported HCJFS's motion to extend temporary custody. The court found that mother had only attended "several sessions" of individual counseling. It stated that "[t]he HCJFS caseworker and other service providers have expressed concerns regarding [mother's] anger and large mood swings." The court further noted that mother had completed domestic-violence coaching and parenting classes, but had not completed the coaching component of the parenting classes.

{¶11} Additionally, T.C. had expressed concerns about returning to mother's home. Her therapist had recommended family counseling sessions prior to reunification. The court noted that "HCJFS has expressed concerns that [mother] has suggested to [T.C.] during visits that she stop taking her prescribed medication." Finally, the court observed that mother's visits remained supervised.

{¶12} On December 20, 2018, mother filed another motion asking that custody of her children be remanded to her. Subsequently, HCJFS filed a second motion to extend temporary custody, which the court ultimately granted. Mother withdrew her motion and stipulated that she agreed with HCFJS's motion.

{¶13} The court found that mother had recently been evicted from her apartment, and HCJFS had not been able to verify mother's new housing. Further, mother had not consistently engaged in therapy. HCJFS had concerns that she had

maintained a relationship with A.F.'s father, who had "inflicted domestic violence on mother." Mother stipulated that she needed "to regularly attend individual counseling, obtain stable housing and income, participate in family sessions with the children, continue in domestic violence services and demonstrate an ability to protect the children." The court further found that children's fathers had not been involved in reunification services.

{¶14} The court also noted that HCJFS had requested approval of a case plan to allow visits between T.C. and her stepmother, the wife of T.C.'s father, who had previously filed a petition for custody. The court found that she had a significant relationship with T.C. and had provided care for T.C. for a significant period of T.C.'s life. HCJFS had completed a home study and had approved her as a possible placement. T.C.'s father, who was still incarcerated, supported the placement of T.C. with stepmother.

{¶15} On April 8, 2019, HCJFS filed a motion to terminate temporary custody of T.C. and to award custody of T.C. to stepmother. Three days later, it filed a motion to modify temporary custody of S.F. and A.F. to permanent custody. The children's guardian ad litem filed a pretrial statement indicating her agreement with HCJFS's motions. She also requested that an attorney be appointed for S.F. and A.F. under *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, because they had consistently expressed a desire to return to their mother's custody.

{¶16} At a hearing on the motions, the magistrate found that the children had been in the temporary custody of HCJFS for 12 or more months of a consecutive 22-month period. As to S.F. and A.F., the magistrate found that their fathers had abandoned them, and that it was their best interest to grant permanent custody of

them to HCJFS. The magistrate further found that it was in T.C.'s best interest to grant legal custody to her stepmother.

{¶17} Mother and A.F.'s father filed objections to the magistrate's decision. The juvenile court overruled their objections and adopted the magistrate's decision. This appeal followed.

{¶18} In her sole assignment of error, mother contends that the juvenile court erred in granting HCJFS's motion for permanent custody of S.F. and A.F. and the motion to terminate temporary custody of T.C. and award custody to a relative. She argues that that the court's decisions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶19} A.F.'s father presents two assignments of error for review. In his first assignment of error, he contends that the court's decision granting permanent custody of A.F. to HCJFS was not supported by clear and convincing evidence and that the court did not analyze the statutory factors as related to him. In his second assignment of error, father contends that the court's decision was not supported by sufficient evidence and was against the manifest weight of the evidence. None of these assignments of error are well taken.

### *Permanent Custody of S.F. and A.F.*

{¶20} As to A.F. and S.F., R.C. 2151.414(B) provides that a juvenile court may grant permanent custody of a child to a public children-services agency if it finds by clear and convincing evidence that (1) permanent custody is in the best interest of the child and (2) that one of the five conditions in R.C. 2151.414(B)(1)(a) through (e) applies. *In re J.G.S.*, 1st Dist. Hamilton Nos. C-180611 and C-180619, 2019-Ohio-802, ¶ 34. The record shows that all three children had been in the custody of HCJFS for more than 12 months of a consecutive 22-month period. Therefore, clear

6

and convincing evidence supported the trial court's finding that the condition in R.C. 4151.414(B)(1)(d) had been met. *See id.* at ¶ 37; *In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 29-30.

{**¶21**} Thus, the only issue remaining is whether granting permanent custody of A.F. and S.F. to HCJFS was in their best interest. *See J.G.S.* at ¶ 38; *In re L.W.J.*, 1st Dist. Hamilton Nos. C-140282 and C-140283, 2014-Ohio-4181, ¶ 26. R.C. 2151.414(D)(1) provides that in determining the child's best interest, the court shall consider "all relevant factors," including (a) the child's interaction with parents, siblings, relatives, foster caregivers and out-of-home providers, and any person who could have significantly affected the child; (b) the wishes of the child, as expressed by the child or the child's guardian ad litem; (c) the custodial history of the child; (d) the child's need for legally secure placement and the type of placement that could have been achieved without a grant of permanent custody; and (e) whether any of the factors under R.C. 2151.414(E)(7) to (11) apply.

{**¶22**} The factors listed in R.C. 2151.414(E)(7) to (11) include whether (1) the parent had been convicted of or pleaded guilty to certain criminal offenses; (2) the parent had repeatedly withheld medical treatment or food from the child when the parent had the means to provide the treatment and food; (3) the parent had placed the child at substantial risk of harm two or more times due to alcohol or drug abuse or had refused to participate in further treatment two or more times; (4) the parent had abandoned the child; and (5) the parent had had parental rights involuntarily terminated with respect to a sibling of the child, and the parent had failed to provide clear and convincing evidence that the parent can provide a legally secure permanent placement and adequate care for the health, welfare and safety of the child. *In re B/K Children*, 1st Dist. Hamilton No. C-190269, 2019-Ohio-5503, ¶ 14-15. No single

7

factor is given greater weight or heightened significance. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 57; *In re P. & H. Children*, 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 35.

{¶23} Mother argues that the trial court did not consider the factors under R.C. 2151.414(E)(7) to (11) as required by R.C. 2151.414(D)(1)(c). This court has held that while a trial court need not specifically enumerate these factors in its decision, the record must contain some indication that it considered all of the necessary factors. *In re B/K Children* at ¶ 16; *In re K.T.1*, 1st Dist. Hamilton Nos. C-170667, C-170687, C-170701, C-170702 and C-170707, 2018-Ohio-1381, ¶ 14 ("*In re K.T.1 I*"). We stated that "[w]e strongly encourage the juvenile court's discussion of each factor, but we cannot find error in the juvenile court's failure to discuss each factor if the record otherwise indicates that all of the necessary factors were considered." *In re B/K Children* at ¶ 27, citing *In re K.T.1*, 2018-Ohio-4312, 121 N.E.3d 847, ¶ 46 (1st Dist.) ("*In re K.T.1 II*").

{¶24} In *In re B/K Children*, we stated that the magistrate's decision only referenced the R.C. 2151.414(D)(1)(c) factors in regard to the children's fathers. It did not discuss them in relation to the mother, and the record did not show that it had considered them as to her. Therefore, we reversed the juvenile court's decision granting permanent custody of her children to HCJFS and remanded the cause "with instructions to the juvenile court to consider the best-interest factors and to discuss them with specificity." *In re B/K Children* at ¶ 18.

{¶25} Looking at the magistrate's decision as a whole, we find the present case to be distinguishable. Here, the magistrate stated, "The Court considered all of the factors in divisions (E)(7) to (11) and found that the following apply in this present case: 2151.414(E)(10) The parent has abandoned the child. The children's

8

fathers have abandoned them." In ruling on the objections, the juvenile court used the same language. Thus, the record shows that the court considered the factors as to mother. It simply found that they did not apply to her, and the record supports that conclusion. Therefore, we need not reverse the juvenile court's decision on that basis. *See in re K.T.1 II* at ¶ 44-46. Further, it was not prejudicial to mother that the court determined those factors do not apply to her.

{¶26} As to the remaining factors, the record shows that the court considered all of the relevant factors. Mother argues that she complied with the provisions 0f the case plan. But the dispositive issue is not whether the parents have complied with the case plan, but whether the parent has substantially remedied the conditions that led the children's removal. *In re J.B.*, 8th Dist. Cuyahoga Nos. 98518 and 98519, 2013-Ohio-1703, ¶ 17. A parent's compliance with the case plan does not preclude a trial court from awarding custody to a children-services agency, as long as it is in the child's best interest. *In re J.G.S.*, 1st Dist. Hamilton Nos. C-180611 and C-180619, 2019-Ohio-802, at ¶ 39.

{¶27} Despite engaging in services, mother has not demonstrated the level of behavioral change necessary to provide a safe, stable home for her children. Mother was supposed to engage in therapy to address her aggressive behaviors. She was inconsistent in her attendance at therapy. Further, she continued to engage in aggressive behavior. HCJFS submitted into evidence a video showing mother engaged in a violent altercation in August 2019, right around the start of the permanent-custody hearing. Mother claimed to be defending herself, but even after the altercation began to break up, mother continued holding onto another woman's hair and repeatedly punching her and kneeing her in the face. The altercation

9

occurred about two years after HCJFS became involved with mother and her children and ten months after mother started therapy.

{¶28} Mother had been the victim of domestic violence at the hands of S.F's father. She no longer had contact with him. But A.F.'s father was convicted of burglary after he broke into mother's house in August 2018, assaulted her, and stole things from her home. Mother continued to associate with him after he got out of prison. In March 2019, mother filed charges against him, but later recanted. At the permanent-custody hearing, mother said that she had made false reports and that she was often the aggressor during these incidents. Whether she was the victim or the aggressor in these incidents, they directly impact her ability to provide a safe and secure home for her children.

{¶29} Mother was not able to secure stable housing. She was evicted from three apartments between May 2018 and February 2019. She visited her children regularly, but she was never able to move beyond the highest level of supervision, facilitated visits. At one point, the staff of the Family Nurturing Center, where the visits occurred, recommended that she go down to the next level, monitored visitation. But the recommendation was withdrawn after an incident where she refused to follow the rules of visitation set out by the Family Nurturing Center, attempted to hide behind a pole to be out of the supervisor's vision, continued to talk on the phone with an unauthorized person during the visits, and was generally hostile to the center's staff.

{¶30} Mother argues that the children are bonded with her and have expressed a strong desire to return home with their mother. The trial court acknowledged this fact, but stated, "They are, however, young children and lack maturity to make decisions regarding their permanent placement." In a case

involving a four-year-old and a seven-year-old child, we stated that the R.C. 2151.414(D)(1)(b) factor, which requires the court to consider the wishes of the child, "is of minimal value in determining their best interests." *In re P. & H. Children*, 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 38. Additionally, the children were bonded with their foster parents and doing well in their foster homes.

{¶31} As to A.F.'s father, he contends that there were few provisions in the case plan involving him, and that the magistrate failed to analyze the best-interest factors as applied to him. We disagree. The record shows that the magistrate did consider the factors as they related to father and frequently referred to the children's "parents" in his decision.

{¶32} Further, at the hearing where the juvenile court granted temporary custody of A.F. to HCJFS, father was present at the hearing. He did not request any services or custody of his child. He wanted mother to have custody of the child. He did request visitation, which was included in the case plan. Yet, as the magistrate found and the evidence showed, he only visited A.F. five times in the previous two years. He did not visit her for periods exceeding 90 days. Consequently, the court properly found that he had abandoned the child. *See* R.C. 2151.414(E)(10).

{¶33} Father was represented by counsel and appeared at numerous hearings. But he did not become involved with the agency until August 2019, four months after the motion for temporary custody. He completed an assessment, which recommended that he engage in individual counseling, domestic-violence services, and anger management. When the permanent-custody hearings began, he had just started individual counseling and had not engaged in any domestic-violence or anger-management services. He had an extensive criminal record, and HCJFS was

11

not able to verify that he had housing or income. He primarily advocated for mother to have custody.

{¶34} In sum, clear and convincing evidence supported the juvenile court's determination that granting permanent custody of A.F. and S.F. to HCJFS was in their best interest. Therefore the evidence was sufficient to support the award of permanent custody. *See In re P. & H. Children*, 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, at ¶ 7; *In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 15. Further, after reviewing the record, we cannot say that the juvenile court lost its way and created such a manifest miscarriage of justice that we must reverse the judgment and order a new trial. Therefore, the judgment was not against the manifest weight of the evidence. *See Eastley v. Volkmann*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12; *In re P. & H. Children* at ¶ 7; *In re A.B.* at ¶ 16.

### Legal Custody of T.C.

{¶35} Mother also contends that the juvenile court erred in awarding legal custody of T.C. to her stepmother. Under former R.C. 2151.353(A)(3), if the juvenile court finds a child to be abused, dependent or neglected, it may award legal custody to any person who has filed a petition for custody. *In re M., R., & H. Children*, 1st Dist. Hamilton No. C-170008, 2017-Ohio-1431, at ¶ 30. When determining legal custody, the court should base its determination on the best interest of the child. *In re T.K.M*, 1st Dist. Hamilton No. C-190020, 2019-Ohio-5076, ¶ 28; *In re F.B.D.*, 1st Dist. Hamilton No. C-180356, 2019-Ohio-2562, ¶ 11.

{¶36} The statutory scheme sets forth no specific set of criteria when determining the best interest of the child in a legal-custody proceeding. But this court has held that the factors set forth in R.C. 2151.414(D) and 3109.04(F) are

instructive. *In re T.K.M.* at ¶ 28; *In re F.B.D.* at ¶ 12. An appellate court must defer to the trial court's findings "regarding the weight to be given to any evidence because the trial court is in the best position to make that determination." *In re M., R., & H. Children* at ¶ 34.

{¶37} The juvenile court has discretion to determine what placement is in the child's best interest, and an appellate court will not reverse that decision absent an abuse of discretion. *In re T.K.M.* at ¶ 29; *In re M., R., & H. Children* at ¶ 30. An abuse of discretion exists when the court's decision is not supported by competent, credible evidence. *In re T.K.M.* at ¶ 29; *In re F.B.D.* at ¶ 11.

{¶38} As indicated above, mother is unable to provide a safe, stable home for T.C. Further, her father was incarcerated in Kentucky on drug offenses. He is expected to be incarcerated for another five to ten years. He has not engaged in any case services outside of phone conversations with T.C. Thus, he is also unable to provide a safe, stable home for the child. He supports placement with his wife.

{¶39} The evidence showed and the magistrate found that T.C.'s stepmother has a significant relationship with the child and has provided care for her for a significant amount of her life. She and T.C. are bonded and get along well. HCJFS approved stepmother's home study and had no concerns about her ability and willingness to provide T.C. with a permanent home or to engage in T.C.'s services. Stepmother is also willing to facilitate visits between T.C. and her parents. Although T.C. had expressed that her first choice would be to be reunited with her mother, the record shows that her mother could not provide a stable home for her.

{¶40} Competent, credible evidence supported the juvenile court's finding that it was in T.C.'s best interest to award legal custody to her stepmother. Therefore, we cannot reverse its decision as being an abuse of discretion.

***Summary***

**{¶41}** In sum, mother's assignment of error and A.F.'s father's two assignments of error are without merit. Consequently, we overrule them and affirm the juvenile court's judgment.

Judgment affirmed.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:

The court has recorded its own entry this date.