[Cite as *In re R/G Children*, 2021-Ohio-839.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: R/G CHILDREN | : | APPEAL NO. C-200394 |
| | | TRIAL NO.  F17-243z |
| | : | |
| | : | *O P I N I O N.* |

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  March 19, 2021

*Treleven & Klingensmith LLC* and *John Treleven,* for Appellant Mother,

*Stringer Law, LLC,* and *Elizabeth Stringer,* for Appellant Petitioner,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Nicholas C. Varney*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Adams Law, LLC,* and *Aaren E. Meehan*, for the Guardian Ad Litem.

**ZAYAS, Presiding Judge.**

{¶1}   Appellant mother and appellant petitioner, maternal grandmother, appeal the decision of the Hamilton County Juvenile Court, granting permanent custody of two children to the Hamilton County Department of Job and Family Services ("HCJFS") and denying the custody petition filed by grandmother.   Both raise a single assignment of error contending that the trial court erred in awarding permanent custody to HCJFS.   Grandmother also contends that the trial court erred in denying her petition for custody.   For the reasons discussed below, we find no merit in their assignment of error, and we affirm the judgment of the trial court.

### Factual Background

{¶2}   Mother has two children S.R., born May 15, 2015, and K.G., born August 12, 2017.  HCJFS received interim custody of S.R. on February 1, 2017, via an ex parte telephone emergency order, and S.R. was placed in a foster home.  The following day, the court granted interim custody to HCJFS.  The facts that supported interim custody to HCJFS were that her mother, who was also a minor, had engaged in a heated altercation with grandmother.  As a result, mother fled grandmother's home with S.R., and both were living in the home of mother's cousin.  The cousin, who was in the custody of HCJFS, resided in independent living, which prohibited mother and S.R. from living there.  Mother also had open warrants for a domestic-violence charge and truancy matters.  Mother was placed in the interim custody of HCJFS.  S.R. was found to be dependent and neglected and committed to the temporary custody of HCJFS.

{¶3}   Four months later, mother gave birth to K.G.  Two days after his birth,

K.G. was placed in the interim custody of HCJFS and was later adjudicated dependent. He was placed in the same foster home with S.R.

{¶4} The juvenile court approved a case plan with a goal of family reunification. The plan required mother to engage in individual counseling, to engage in counseling with grandmother, complete parenting classes, obtain and maintain stable housing and employment, visit consistently with the children, and to participate in S.R.'s therapy at the Therapeutic Interagency Program ("TIP") through Cincinnati Children's Hospital. Grandmother was also required to participate in the TIP therapy after TIP sent a letter to the court requesting that grandmother participate in the TIP therapy. At that time, S.R. had been diagnosed with adjustment disorder. Mother successfully completed her therapy and parenting classes, and HCJFS allowed mother to resume living in grandmother's home. Mother only attended eight out of 17 scheduled weekly TIP sessions. Although TIP scheduled weekly sessions with mother, she failed to attend.

{¶5} In early 2018, mother and grandmother began unsupervised visits with the children at grandmother's home. The unsupervised visitation was suspended a month later by HCJFS after K.G.'s alleged father had an unauthorized visit with the child, and mother was charged with assault.[1] Unsupervised visits briefly resumed but were terminated when S.R. began exhibiting severe post-traumatic stress disorder ("PTSD") after visits with mother. Again, HCJFS requested that both mother and grandmother participate in TIP therapy. Both mother and grandmother believed that S.R.'s behaviors were due to separation from them and

---

[1] The magistrate noted that the alleged visit occurred when mother and grandmother ran into father at a bowling alley, and ordered that the child have no contact with the alleged father during unsupervised visits.

3

HCJFS involvement. Mother also believed that the TIP therapy triggered S.R.'s trauma.

{¶6} In June 2018, K.G. was referred to TIP therapy and diagnosed with separation anxiety disorder. At the beginning of his treatment, mother attended seven out of ten sessions and then stopped attending. Grandmother did not attend any sessions.

{¶7} S.R.'s mental-health issues continued to become more severe. S.R. was diagnosed with PTSD, reactive attachment disorder, and intermittent explosive disorder by her new therapist. Despite repeated requests, mother and grandmother did not participate in any of S.R.'s therapy sessions with the new therapist. Both of the foster parents participated in the children's therapy sessions. The children continued to make progress in therapy after the visits with mother were suspended.

{¶8} In November 2018, the trial court continued the suspension of mother's supervised visitations with S.R. because mother still had an open warrant and failed to engage in TIP therapy. The court found that both mother and grandmother had been repeatedly requested to engage in TIP but failed to do so. Supervised visits with K.G. were scheduled to begin at the Family Nurturing Center ("FNC").

{¶9} On January 7, 2019, HCJFS filed a motion to modify temporary custody of the children to permanent custody. Grandmother filed a petition for custody on February 28, 2019. A magistrate denied grandmother's custody petition and granted permanent custody to HCJFS. Mother and grandmother filed objections which were overruled by the trial court. Mother and grandmother appealed challenging the sufficiency and the weight of the evidence supporting the

4

trial court's finding that a grant of permanent custody was in the children's best interest. The children's guardian ad litem and HCJFS ask this court to affirm the juvenile court's judgment.

## *Law and Analysis*

{¶10} R.C. 2151.414(B)(1) sets forth a two-pronged test for courts to apply when determining whether to grant a motion for permanent custody to a public children services agency. "The statute requires the court to find, by clear and convincing evidence, that: (1) one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) permanent custody is in the best interest of the child under R.C. 2151.414(D)(1)(a)-(e). *See* R.C. 2151.414(B)(1)." *In re D.M.*, 1st Dist. Hamilton No. C-200043, 2020-Ohio-3273, ¶ 23.

{¶11} Clear and convincing evidence "is evidence sufficient to 'produce in the mind of the trier of fact[ ] a firm belief or conviction as to the facts sought to be established.' " *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46, quoting *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42. An examination into the sufficiency of the evidence requires this court to determine whether the juvenile court had sufficient evidence before it to satisfy the clear-and-convincing standard. *In re R.M.S.*, 1st Dist. Hamilton Nos. C-190378, C-190386 and C-190405, 2019-Ohio-4281, ¶ 27. When reviewing a challenge to the manifest weight of the evidence, we must review the record to determine whether the trial court lost its way and committed such a manifest miscarriage of justice that its judgment must be reversed. *Id.*

{¶12} Because both appellants acknowledge that both children had been in the temporary custody of HCJFS for more than 12 months of a consecutive 22-month

5

period, we need only determine whether clear and convincing evidence supported the trial court's finding that a grant of permanent custody was in both children's best interest.

{¶13} In determining whether permanent custody is in a child's best interest, the juvenile court must consider all relevant factors, including: (a) the child's interaction with parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (b) the child's wishes; (c) the custodial history of the child; (d) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors under R.C. 2151.414(E)(7) to (E)(11) apply. *See* R.C. 2151.414(D)(1)(a)-(e); *In re S.G.*, 1st Dist. Hamilton No. C-200261, 2020-Ohio-5244, ¶ 36.

{¶14} The factors listed in R.C. 2151.414(E)(7) to (11) include whether (1) the parent had been convicted of or pleaded guilty to certain criminal offenses; (2) the parent had repeatedly withheld medical treatment or food from the child when the parent had the means to provide the treatment and food; (3) the parent had placed the child at substantial risk of harm two or more times due to alcohol or drug abuse or had refused to participate in further treatment two or more times; (4) the parent had abandoned the child; and (5) the parent had had parental rights involuntarily terminated with respect to a sibling of the child, and the parent had failed to provide clear and convincing evidence that the parent can provide a legally secure permanent placement and adequate care for the health, welfare and safety of the child. *In re B/K Children*, 1st Dist. Hamilton No. C-190269, 2019-Ohio-5503, ¶ 14-15.

{¶15} "No single factor is given greater weight or heightened significance." *In re P.,* 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 35. As long as the court considered all the factors, it need not specifically enumerate those factors in its decision. *See In re A.F.,* 1st Dist. Hamilton Nos. C-200230 and C-200231, 2020-Ohio-5069, ¶ 23; *In re B/K Children* at ¶ 16. The weight to be given to the individual factors lies within the trial court's discretion. *In re M., R. & H. Children*, 1st Dist. Hamilton No. C-170008, 2017-Ohio-1431, ¶ 34.

{¶16} The record supports the court's findings under R.C. 2151.414(B)(1)(a)-(c) that the children are bonded together and bonded with their foster parents and foster siblings. The guardian ad litem recommended that the children be placed in the permanent custody of HCJFS. The evidence demonstrated that S.R. did not do well physically or mentally after unsupervised visitation with mother. Both children were doing well with their foster family, and the foster family has continued to engage with the therapy for the children.

{¶17} Both mother and grandmother challenge the court's finding under R.C. 2151.414(B)(1)(d) that the children are in need of a legally secure placement that cannot be achieved without a grant of permanent custody because mother and grandmother did not understand the therapeutic needs of the children and failed to attend the TIP therapy. The record shows that S.R. has significant mental-health needs and K.G. requires therapy. In April, August, and November of 2018, HCJFS requested that both of them participate in TIP sessions. Although mother attended approximately eight TIP sessions for S.R. in early 2018, she was inconsistent and stopped attending the sessions by April 2018. Despite the repeated requests, grandmother joined mother for one session in March 2018, but never attended

again. In December 2018, mother attended eight out of 17 sessions for K.G., and again stopped participating. Grandmother did not engage in K.G.'s TIP therapy and admittedly had no bond or relationship with K.G.

{¶18} Mother did not testify or present any evidence explaining why she failed to engage in the TIP therapy. Grandmother acknowledged that the HCJFS caseworker asked her to participate in the TIP therapy and continued to ask her to participate in TIP sessions when they appeared in court. She testified that she believed that the therapy she had completed before mother came home was a substitute for TIP sessions. Grandmother further explained that when she attempted to engage in the TIP program, the case was closed.

{¶19} The record contains clear and convincing evidence to support the court's finding that mother and grandmother do not understand the mental-health needs of the children, made no effort to understand the needs of the children, and are unable to provide for the children's special needs. Both mother and grandmother dismissed the seriousness of the children's mental-health issues and believed that the issues stem solely from the separation of the children from the family and HCJFS involvement. Although grandmother testified that she would continue the children's therapy, the court did not find her testimony to be credible.

{¶20} Finally, under R.C. 2151.414(E)(7) to (11), the court found that mother had abandoned the children by failing to visit the children for over 90 days. However, mother did not challenge that finding or offer any argument or reasoning as to how the court erred. The burden of affirmatively demonstrating error on appeal rests with the appellant. *See* App.R. 9 and 16(A)(7).

{¶21} Based on this record, there was clear and convincing evidence to

support the trial court's findings that the children needed a legally secure placement, rather than a grant of legal custody to grandmother, and permanent custody with HCJFS was in the best interest of both children.

### *Conclusion*

{¶22} We overrule the sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS** and **CROUSE, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.